DETERMINED IN THE

# THIRD DEPARTMENT

AT

## GENERAL TERM,

### July, 1889.

---

## THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* JOHN PRICE, APPELLANT.

*Crime — charged in an indictment as a second offense — when the first offense was committed in another State, effect of a pardon by the governor thereof — exception to the ruling as to the competency of a juror, subsequently peremptorily challenged, where the peremptory challenges were not exhausted.*

Under an indictment for the crime of grand larceny in the first degree, charged as a second offense, evidence showing that the defendant had been convicted of a felony in Richmond county, in the State of Georgia, namely, larceny of $2,500 from the National Bank of Augusta, in that State, is competent, notwithstanding the fact that a pardon was shown to have been granted to the defendant by the governor of the State of Georgia for the offense committed in that State. *Ex parte Garland* (4 Wall., 380) distinguished.

There is no constitutional provision which prevents the legislature of the State of New York from providing that where persons have been convicted of felony in another State, whether subsequently pardoned or not, they shall, upon a subsequent conviction of felony in this State, be, by reason of such prior conviction, more severely punished for the latter offense.

An objection and exception taken to the erroneous ruling of the court, to the effect that a juror was not disqualified, is not available to a prisoner on an appeal taken by him, where such juror is thereafter peremptorily challenged by the prisoner and excluded from the panel, and it appears that the prisoner did not, upon the trial, exhaust the number of peremptory challenges given to him by law.

HUN — VOL. LIII     24

APPEAL by the defendant from a judgment of conviction of the crime of larceny in the first degree, charged as a second offense, rendered at the Court of Oyer and Terminer, held in and for the county of Albany, on the 30th day of October, 1888.

The defendant was tried, convicted and sentenced at the Albany county Oyer and Terminer, in October, 1888. The indictment was for the crime of grand larceny in the first degree, charged as a second offense under section 688 of the Penal Code.

The indictment charged the defendant with having stolen from one Peter K. Dedrick, in the city of Albany, on the 30th day of July, 1888, thirty-five bonds of the value of $1,000 each, made by the Equitable Mortgage Company of Kansas City. The indictment further charged that, in 1884, the defendant was duly convicted of a felony in Richmond county in the State of Georgia, namely, larceny of $2,500 from the National Bank of Augusta, in that State. The testimony tended to show that on the 30th of July, 1888, at about half-past ten o'clock in the forenoon Aaron Dedrick, acting for his brother Peter K. Dedrick, went to the Mechanics and Farmers' Bank, situate on the corner of State and James streets, in Albany, and there received thirty-five bonds, executed by the Equitable Mortgage Company of Kansas City, of the value of $35,000, of which bonds Peter K. Dedrick was the owner. Aaron Dedrick wrapped them in a paper, put two rubber bands around the package, and holding the package in his hand went out of the bank on to State street, turned the corner into James street and walked north on the east side of James street 120 feet to his one-horse buggy, which he had left there, the horse being tied to a lamp-post, the horse's head facing north. He laid the package of bonds on the buggy seat, took from the seat his duster coat and was in the act of putting it on, standing on the edge of the sidewalk with his face towards the buggy, when the defendant passed on the walk behind him, and accosted him with the remark, "How are you doctor?" Dedrick was not accustomed to the title of doctor, and without turning around, and supposing that the defendant had made a mistake, replied, "How are you?" The defendant passed on to the head of the horse and said "Has that horse got the glanders?" Dedrick replied, "I guess not," and turned to see who it was. The defendant then pointed towards or touched the horse's nose

and said, "There, there, the glanders;" defendant then moved on toward the north; Dedrick turned to look at his package of bonds and it was gone. As Dedrick laid his package on the buggy seat he casually observed two or three persons between him and the corner of State street, but when he missed his bonds he saw no one in that direction. He saw no one take them; he recalled an impression as of a shadow of some one near him when the defendant was speaking, but he did not see anyone whom he could suppose had taken the bonds; his horse had no symptoms of the glanders; the defendant had been in Albany for two or three days before the theft; had registered at the Kenmore Hotel under the name of "W. H. Hall." Two other strangers had been at the hotel at the same time. The defendant was on State street near the Mechanics and Farmers' Bank about half-past ten, in company with two strangers. Evidence was given tending to show that the strangers seen in company with defendant on State street were the same who had been at the Kenmore Hotel. The defendant, immediately after the theft, was seen on Pearl street going toward the Kenmore Hotel. Shortly after the theft the two strangers hired a hack for five dollars, and left the Kenmore Hotel and were driven to Troy. The defendant was arrested in Troy the same afternoon, and gave an account of himself which was, in the main, false. The bonds were not recovered and the two strangers were not found.

The People read the record of the defendant's conviction in Georgia under the name of C. H. Simmons. The defendant read in evidence his full pardon granted by the governor of that State. Other facts are stated in the opinion.

*Peter Mitchell,* for the appellant.

*Hugh Reilly,* for the People.

LANDON, J.:

The trial court refused to hold that the pardon granted the defendant by the governor of the State of Georgia exempted him from liability to conviction here as for a second offense. The court held that the pardon did not disprove the fact of conviction in the State of Georgia, but was consistent with it, and hence the defendant might be lawfully convicted under section 688 of our Penal Code, notwithstanding the pardon. The question does not appear

to have been decided in this State. The defendant relies upon the principles announced in *Ex parte Garland* (4 Wall., 380). The court there held that "a pardon reaches both the punishment prescribed for the offense and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense." This broad doctrine is reiterated in subsequent cases. ( *U. S.* v. *Padelford*, 9 Wall., 531; *Carlisle* v. *U. S.*, 16 id., 147; *Osborn* v. *U. S.*, 91 U. S., 478.) Of course, past acts cannot be obliterated, but the legal effects of them can be. It remains true that the defendant was convicted in the State of Georgia, although subsequently pardoned, and hence it is urged that the defendant still remains in the class described in section 688 of our Penal Code, as one "having been convicted under the laws of another State."

Section 692 of the Penal Code provides that a pardon which shall relieve from a judgment of habitual criminality shall not prevent a subsequent judgment of habitual criminality upon subsequent conviction for felony. This, at first, seems to be an exception, and to imply that only with respect to habitual criminals is previous pardon made inoperative; but it is obviously inserted, because needed with respect to habitual criminals, but not needed in the cases mentioned in section 688, because there the fact of previous conviction is made descriptive of the renewed offense, irrespective of the fact of pardon.

The cases cited from the Supreme Court of the United States hold that, since the pardoning power is conferred upon the executive by the Constitution, it is not within legislative control or restriction, and hence the legislature cannot diminish the full absolution which the pardon imports. Assuming this to be true, the result would be that the legislature of the State of Georgia could not impair the force of the pardon which, under the Constitution of that State, her governor grants. The same reasoning would apply to the legislature of the State of New York with respect to a pardon granted by the governor of New York, but does not touch the phase of the case here presented. The police power of every State is complete, except as restrained by her own or the Federal Constitution. No constitutional provision restrains the legislative power of New York

from prescribing that where persons have been convicted for felony in another State, whether subsequently pardoned or not, they shall, upon subsequent conviction of a felony in this State, be more severely punished. That the power exists is clearly inferable from the extent of the police power as defined by the Supreme Court of the United States. (*Railroad Co.* v. *Husen*, 95 U. S., 465, 471, and cases there cited; *Bowman* v. *Chicago, etc., Railway Co.*, 125 id., 465, 492.) Our own courts recognize the fact that a moral stigma rests upon a convict, notwithstanding his pardon. (*Matter of* ——, *an Attorney*, 86 N. Y., 563; *People* v. *Eighmy*, 78 id., 333.) The fact of conviction is a part of his past history. (*People* v. *Raymond*, 96 N. Y., 41.) In none of the cases in the Supreme Court of the United States was the pardoned person on trial for a second offense. His pardon proved effectual to exempt him from the penalty incurred either under a prior or subsequent law. Here no penalty is incurred for the offense committed in Georgia, but a double penalty is inflicted upon the repetition here of the like offense.

We conclude, therefore, that the fact of the defendant's conviction for a felony under the laws of the State of Georgia was properly alleged and proved, and that the pardon did not exempt him from the increased punishment prescribed for a second offense.

The defendant excepted to the ruling of the court that one Cochrane was not disqualified as a juror. The defendant then peremptorily challenged him. The defendant did not exhaust his peremptory challenges. Thus, the defendant, who did not want this person as a juror, was permitted to exclude him without the least embarrassment to his liberty of choice and challenge with respect to the other persons called as jurors. Assuming, but not deciding that Cochrane was disqualified, the defendant was not obliged to challenge him peremptorily, and if he had not his exception would have been good within the *McQuade Case* (110 N. Y., 284), for he could not know that if he challenged him he might not have to exhaust all his peremptory challenges in setting aside jurors more objectionable than Cochrane, and yet not have enough to exclude them *and* Cochrane. But he chose to exercise his peremptory challenge, and the result proved that he did have enough peremptory challenges to exclude all the objectionable jurors *and* Cochrane. He, therefore, was not injured. (*People* v. *Carpenter*, 102 N. Y., 243.)

We have examined the exceptions to the admission of various portions of the testimony and to the denial of motions to strike out, and find none that we regard as well taken. We have read the entire evidence and we think it was sufficient to warrant the verdict rendered by the jury. The case against the defendant was one of circumstantial evidence; but we have read the evidence and are satisfied that, although the defendant did not take the package of bonds, he purposely diverted Dedrick's attention enough to enable a confederate to take them.

The judgment should be affirmed.

LEARNED, P. J., and INGALLS, J., concurred.

Judgment and conviction affirmed.