PEOPLE v. CARLESI.

(Supreme Court, Appellate Division, First Department.  January 3, 1913.)

1. CRIMINAL LAW (§ 1172\*)—HARMLESS ERROR—SUBMISSION OF COUNT—CURE BY VERDICT.

Error, if any, in submitting a count under Penal Law (Consol. Laws 1909, c. 40) § 881, for uttering a forged instrument was cured by a conviction of forgery in the second degree.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3128, 3154–3157, 3159–3163, 3169; Dec. Dig. § 1172.\*]

2. CRIMINAL LAW (§ 1212\*)—EXTENT OF PUNISHMENT—SECOND OFFENSE—PENALTY—"FORGERY"—"POSSESSION WITH INTENT TO DEFRAUD"—"POSSESSION WITH INTENT TO UTTER."

Penal Law (Consol. Laws 1909, c. 40) § 1941, provides that a person who has been convicted within this state of a felony, or under the laws of any other state or government of a crime which, if committed in this state, would be a felony, is punishable on subsequent conviction as for a second offense.  Section 881 defines as forgery the possession of any forged coin with intent to utter, and section 894 punishes the possession of United States coins knowing them to be counterfeit with intent to utter, by fine and imprisonment or both.  U. S. Rev. St. § 5457 (U. S. Comp. St. 1901, p. 3683), makes the possession of counterfeit United States coin with intent to defraud an offense punishable by fine and imprisonment.  *Held*, that there was no distinction between the federal offense of possession with intent to defraud and the state offense of possession with intent to utter, and that defendant, after conviction under the federal statute of selling and having in his possession counterfeit coins, might be convicted of forgery as a second offense.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3303; Dec. Dig. § 1212.\*

For other definitions, see Words and Phrases, vol. 3, pp. 2900, 2910; vol. 8, p. 7665.]

3. CRIMINAL LAW (§ 1212\*)—PUNISHMENT—SECOND OFFENSE—PRIOR PUNISHMENT PARDONED.

Under Penal Law (Consol. Laws, c. 40) § 1941, which provides that a person who, after having been convicted in this state of a felony, or under the laws under any other government of a crime which, if committed in this state, would be a felony, commits any crime, is punishable upon conviction as for a second offense, a prior conviction of a felony under the federal statute, after pardon and restoration to civil rights, may be the basis of a conviction of a subsequent crime as a second offense; since the punishment inflicted is solely for the second offense to which a greater degree of criminality is thereby attached.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3303; Dec. Dig. § 1212.\*]

Appeal from Court of General Sessions, New York County.

Charles Carlesi was convicted of forgery in the second degree as a second offense, and he appeals.  Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

George Gordon Battle, of New York City, for appellant.
Robert S. Johnstone, of New York City, for the People.

MILLER, J.  The defendant was indicted as a second offender for the crime of forgery in the second degree (section 887 of the Penal

Law [Consol. Laws 1909, c. 40]), and uttering a forged instrument (Id. § 881). The jury found him guilty "of forgery in the second degree as a second offense." This appeal is from the judgment of conviction by which he was sentenced to imprisonment in a state prison for the term of 12 years and 11 months.

[1] It was proved that on or about June 15, 1907, the defendant got possession of a genuine check of the Fiss, Doerr & Carroll Horse Company by cashing it for the holder; that he procured fac simile lithographed blanks to be made, filled in one of the blanks for $3,200, and caused it to be deposited in a bank by a third party, and the proceeds to be drawn out. The signature on the forged check was traced from that on the genuine check, which remained in the defendant's possession until July 17, 1907. The forged check was made and uttered on July 9th. While the evidence consisted principally of the testimony of accomplices, that testimony was strongly corroborated by the fact, which was established by independent evidence of the possession by the defendant of the genuine check which was on a special lithographed form, and of which the forged check was a fac simile, except for date, amount, and name of the payee. That fact tended directly to connect the defendant with the commission of the offense, and the proof of it did not depend upon expert testimony as is asserted by the appellant, even if that could make any difference. Even if it was error to submit the second count of the indictment to the jury, which we are far from deciding, it was cured by the verdict.

[2] The appellant urges, however, that he was improperly convicted as a second offender. The indictment charged that the defendant was convicted on the 20th day of December, 1892, at a Circuit Court of the United States of America for the Southern District of New York of the crime of selling and having in his possession counterfeit silver dollars upon an indictment which charged that the defendant and others "did unlawfully and feloniously, and with intent to defraud some person unknown, sell, utter, and publish a certain falsely made, forged, and counterfeited coin, in resemblance and similitude of the silver coin of the United States, called and known as the standard silver dollar, * * * and within the jurisdiction of the court last aforesaid feloniously, and with intent to defraud some person unknown, did have in their possession a certain falsely made, forged, and counterfeited coin, in resemblance and similitude of the silver coin of the United States, called and known as the standard silver dollar, * * * well knowing the same to be false, forged, and counterfeited," and that he was sentenced by said court to be imprisoned in the Monroe County Penitentiary for the term of 3½ years, and to pay a fine of $1. The defendant conceded the previous conviction as alleged in the indictment, and put in evidence a pardon granted to him on October 3, 1904, which recited the fact of his indictment, his conviction on a plea of guilty, his sentence, that he had served his term of imprisonment, and, after earning all allowances for good conduct, was discharged on September 10, 1898, and had since conducted himself in an exemplary manner, and concluded as follows:

"Now, therefore, be it known, that I, Theodore Roosevelt, President of the United States of America, in consideration of the premises, and divers other

good and sufficient reasons me thereunto moving, do hereby grant unto the said Charles Carlesi a pardon, and restore his civil rights."

Of course, the principal, if not the sole, purpose of the pardon in this case was to restore to the convict his civil rights. We prefer, however, to put our decision on the broad ground that the first conviction may, notwithstanding the offense be pardoned, be the basis for a conviction under section 1941 of the Penal Law, which provides:

"A person, who, after having been convicted within this state, of a felony, or an attempt to commit a felony, or of petit larceny, or, under the laws of any other state, government, or country, of a crime which, if committed within this state, would be a felony, commits any crime, within this state, is punishable upon conviction of such second offense, as follows. * * *"

The appellant urges two propositions: (1) That the first offense as defined by section 5457 of the United States Revised Statutes (U. S. Comp. St. 1901, p. 3683) was not a felony as defined by the laws of this state (sections 881 and 894 of the Penal Law), and that, therefore, the defendant could not be convicted as a second offender perforce of said section 1941; and (2) that the prior conviction could not after a pardon be the basis of a conviction of a subsequent crime as a second offense.

Said section 5457 of the United States Revised Statutes provides:

"Every person who falsely makes, forges, or counterfeits, or causes or procures to be falsely made, forged or counterfeited, or willingly aids or assists in falsely making, forging, or counterfeiting any coin or bars in resemblance or similitude of the gold or silver coins or bars which have been, or hereafter may be, coined or stamped at the mints and assay offices of the United States, or in resemblance or similitude of any foreign gold or silver coin which by law is, or hereafter may be, current in the United States, or are in actual use and circulation as money within the United States, or who passes, utters, publishes or sells, or attempts to pass, utter, publish or sell, or bring into the United States from any foreign place, knowing the same to be false, forged, or counterfeit, with intent to defraud any body politic or corporate, or any other person or persons whatsoever, or has in his possession any such false, forged or counterfeited coins or bars, knowing the same to be false, forged or counterfeited, with intent to defraud any body, politic or corporate, or any other person or persons whatsoever, shall be punished by a fine of not more than five thousand dollars, and by imprisonment at hard labor not more than ten years."

### Section 881 of the Penal Law of this state provides:

"A person who, knowing the same to be forged or altered, and with intent to defraud, utters, offers, disposes of or puts off as true, or has in his possession, with intent so to utter, offer, dispose of, or put off:

(1) * * * (2) a forged coin; or, (3) * * * is guilty of forgery in the same degree as if he had forged the same."

### Section 894, Id., provides:

"A person who has in his possession a counterfeit of any gold or silver coin, whether of the United States or of any foreign country or government, knowing the same to be counterfeited, with intent to sell, utter, use, circulate or export the same, as true or as false, or to cause the same to be so uttered or passed, is punishable by imprisonment not more than five years, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment."

The argument is that there is a distinction between possession with intent to defraud and possession with intent to utter. That distinction is too nice, and in any event the first conviction was of "selling and having in possession."

[3] The second proposition is based on the following language of Mr. Justice Field, speaking for the majority of the United States Supreme Court in Ex parte Garland, 4 Wall. 333, 18 L. Ed. 366, viz.:

"A pardon reaches both the punishment prescribed for the offense and the guilt of the offender; and, when the pardon is full it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching. If granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights. It makes him, as it were, a new man, and gives him a new credit and capacity."

The appellant cites many cases in which that language has been quoted or referred to with approval, one case in which the precise proposition contended for by him seems to have been decided (Edwards v. Commonwealth, 78 Va. 39, 49 Am. Rep. 377), and 1 Bishop on Criminal Law, § 919, wherein the author takes the view that a second offense, the first one having been pardoned, is not a second but a first offense.

The precise point does not seem to have been decided in this state, and, so far as the research of counsel goes, has been decided in only two states, the Supreme Court of Appeals of Virginia in Edwards v. Commonwealth, supra, taking the appellant's view, and the Court of Appeals of Kentucky holding to the contrary. Mount v. Com., 2 Duv. (63 Ky.) 93; Herndon v. Com., 105 Ky. 197, 48 S. W. 989, 88 Am. St. Rep. 303. The case nearest in point in this state is People v. Price, 53 Hun, 185, 6 N. Y. Supp. 833, affirmed on the opinion below, 119 N. Y. 650, 23 N. E. 1149. But the appellant seeks to distinguish that case by the fact that the pardon for the first offense was granted by the Governor of the state of Georgia, and that the decision was put upon the ground that the Legislature of the state of New York was not controlled by the Constitution or laws of the state of Georgia. While that point was made by Mr. Justice Landon, writing for the General Term, his opinion, which was adopted by the Court of Appeals, put the decision on a much broader ground, namely, that the conviction was not obliterated by the pardon, but remained as a fact in the past history of the defendant, and that the punishment for the second offense was solely for that and not at all for the offense committed in Georgia; and necessarily the latter proposition is correct, else all the statutes providing for increased punishment for second offenses would be unconstitutional. See People ex rel. Cosgriff v. Craig, 195 N. Y. 190, 88 N. E. 38.

Manifestly, the language of Mr. Justice Field, quoted, supra, is to be read in its bearing upon the precise point before the court. The pardon of this defendant did not "make a new man" of him. It did not "blot out" the fact or the record of his conviction, and, of course, the Supreme Court, in deciding that the Congress could not impinge upon the pardoning power of the executive, did not intend to hold

that the executive could blot out a solemn record of the judicial
branch of government. See Roberts v. State of New York, 30 App.
Div. 106, 51 N. Y. Supp. 691; 160 N. Y. 217.[1] The pardon in this
case merely restored the defendant to his civil rights. If it had
been granted before his term of imprisonment had been served, it
would also have relieved the defendant of that. But it did not oblit-
erate the record of his conviction or blot out the fact that he had been
convicted. Matter of ――――, an Attorney, 86 N. Y. 563. It relieved
the defendant of the consequences which the law attached to his of-
fense. But the defendant is to be punished now· solely in consequence
of his second offense. The fact of the former conviction is an ele-
ment merely in determining the criminality of the second offense.
People v. Sickles, 26 App. Div. 470, 50 N. Y. Supp. 377; Id., 156·
N. Y. 541, 51 N. E. 288; People ex rel. Cosgriff v. Craig, supra.
The Legislature of this state has said that one who commits a crime
after having been convicted of another crime is a greater offender·
than as though he had not previously been convicted, and the punish-
ment inflicted is solely for the second offense to which a greater de--
gree of criminality is thus attached. That degree of criminality is not
at all lessened by the fact of a pardon which assumes his guilt, remits
the punishment, and affords him an opportunity to become a law-
abiding citizen. It was solely within the province of the Legislature
to attach such greater criminality to the second offense from the mere
fact of a conviction for a first, and the executive by the exercise of
the pardoning power could no more interfere with that exercise of
legislative power than the Legislature could interfere with the power
to pardon.

The judgment of conviction should be affirmed.

INGRAHAM, P. J., and McLAUGHLIN and DOWLING, JJ.,
concur.

LAUGHLIN, J. (concurring). I am of opinion that, if the defend-
ant had received a full unlimited pardon for the former offense, it
would have constituted an invulnerable shield against a subsequent
conviction for a felony as a "second offense" pursuant to the provi-
sions of section 1941 of the Penal Law, which requires a longer
sentence in such cases, because that statute presupposes not merely a
former formal conviction, which may have been vacated or reversed,
but which stands unaffected, whereas such a pardon obliterates guilt
and is equivalent to a verdict of not guilty (1 Bishop's New Criminal
Law, § 919; Edwards v. Commonwealth, 78 Va. 39, 49 Am. Rep. 377;
Ex parte Hunt, 10 Ark. 284; People ex rel. Forsyth v. Court of Gen-
eral Sessions, 141 N. Y. 288, 295, 36 N. E. 386, 23 L. R. A. 856;
Knote v. U. S., 95 U. S. 149, 24 L. Ed. 442; Ex parte A. H. Gar-
land, 4 Wall. 360, 18 L. Ed. 366; Osborn v. U. S., 91 U. S. 478,
23 L. Ed. 388; U. S. v. Klein, 13 Wall. 128, 20 L. Ed. 519); but
the pardon proved by the defendant was granted after he completely
served his sentence, and is expressly limited to restoring his citizen-
ship, and therefore the conviction remains unaffected.

[1] 54 N. E. 678.