103 So.2d 337

**Ernest MASON**

v.

**STATE.**

**5 Div. 493.**

Court of Appeals of Alabama.

Aug. 14, 1956.

Rehearing Denied Oct. 16, 1956.

Glen T. Bashore, Clanton, for appellant.

**2**

John Patterson, Atty. Gen., Robt. Straub, Asst. Atty. Gen., and Geo. Young, Montgomery, of counsel, for the State.

HARWOOD, Presiding Judge.

The indictment against this appellant charged that he, having been convicted of a crime of violence, did possess a pistol, etc.

Section 174, Title 14, Code of Alabama 1940, provides that no person who has been convicted of a crime of violence shall own or possess a pistol.

The appellant filed a plea of not guilty, and a special plea setting up that in 1939 he had been convicted in this State of murder in the second degree and sentenced to a term of fifteen years in the penitentiary; and that on the 24th day of April 1950 the State Board of Pardons and Paroles had granted him a full pardon with restoration of all civil and political rights.

The court sustained the State's demurrer to the special plea above mentioned.

The evidence showed that the appellant, a few months before the trial below, did possess a pistol in his home, and further shows that he had been pardoned and his civil rights restored.

The sole question raised on this appeal by the record and evidence is whether appellant's possession of a pistol, after having been convicted of a crime of violence, is illegal in view of the pardon granted him.

The question presented is original, as far as our own decisions are concerned. We have been assisted by excellent briefs filed by counsel representing the appellant, and the State.

Counsel for appellant relies for error on statements contained in two of our cases as to the effect of a full pardon, that is a pardon with restoration of civil and political rights.

In re Stephenson, 243 Ala. 342, 10 So.2d 1, 3, 143 A.L.R. 166, was a review by our Supreme Court of a decision by the Board of Bar Commissioners denying Stephenson's petition for reinstatement to practice as an attorney. In the course of its opinion, in which the judgment of the commissioners was affirmed, the court quoting from a leading United States Supreme Court case, Ex parte Garland, 4 Wall. 333, 18 L.Ed. 366, wrote:

"Under this appeal we are confronted with the legal effect of petitioner's pardon of the crime for which he was convicted, and the restoration of his civil and political rights. It was held by this court and by the Supreme Court of the United States, on which point all

authorities concur, that (Ex parte Garland, 4 Wall. 333, at page 380, 18 L.Ed. 366):

"'A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.

"'There is only this limitation to its operation: it does not restore offices forfeited, or property or interests vested in others in consequence of the conviction and judgment.'"

The other statement is to be found in Hogan v. Hartwell, 242 Ala. 646, 7 So.2d 889, 891, to the effect that by a pardon "'a person * * * is relieved from the legal consequences of a specific crime'", and that "'a full and unconditional pardon restores to the offender the customary civil rights which ordinarily belong to a citizen.'"

The language of our two cases above set out constitutes broad generalization and like all statements of generalities, will lead to paradoxical conclusions if mechanically and literally applied to every factual situation.

"If the offender really is to be treated as an innocent man after his pardon, the offense which he has committed cannot properly be made ground for removing him from the office of an attorney or trustee, or from any other office. He not only cannot be disqualified as a witness, but proof of his conviction should not be allowed to discredit him." Williston, "Does a Pardon Blot Out Guilt," 28 Harv.L.Rev. 647.

It should be noted that despite the language used in In Re Stephenson, supra, the judgment of the Board of Bar Commissioners denying petitioner's reinstatement to the bar was denied. Further in an earlier proceeding, Ex parte Stephenson, 237 Ala. 488, 187 So. 461, 462, in which this same petitioner had appealed from an order denying his reinstatement as an attorney, following his pardon from a conviction for forgery and subsequent disbarment by the judges of the Fourteenth Judicial Circuit, the Supreme Court, in affirming the order of the circuit judges, wrote:

"The fact of his pardon by the Governor and the restoration of his full civil and political rights has not the effect of restoration to him of the privilege to practice his profession as a member of the bar."

In Terry v. State, 25 Ala.App. 135, 148 So. 157, certiorari denied 226 Ala. 685, 148 So. 159, this court held that the right to examine a witness as to prior conviction for a crime involving moral turpitude is in no manner affected by the fact that the witness has received a pardon for such offense.

The question of the effect of a pardon has often been reviewed in cases dealing with the punishment to be imposed under multiple offender statutes. One of the leading cases is People v. Biggs, 9 Cal.2d 508, 71 P.2d 214, 216, 116 A.L.R. 205. Many authorities are reviewed in the opinion in this case, and we quote the following pertinent excerpts:

"But the somewhat extravagant language occasionally employed must be contrasted with the actual decisions of the courts. It is universally established that a pardon exempts the individual from the punishment which the law inflicts for the crime which he has committed; and generally speaking, it also removes any disqualifications or disabilities which would ordinarily have followed from the conviction. To say, however, that the offender is 'a new man,' and 'as innocent as if he had nev-

er committed the offense,' is to ignore the difference between the crime and the criminal. A person adjudged guilty of an offense is a convicted criminal, though pardoned; he may be deserving of punishment, though left unpunished; and the law may regard him as more dangerous to society than one never found guilty of crime, though it place no restraints upon him following his conviction. The criminal character or habits of the individual, the chief postulate of habitual criminal statutes, is often as clearly disclosed by a pardoned conviction as by one never condoned. The broad generalizations quoted above are, if taken too literally, logically unsound as well as historically questionable. See Williston, Does a Pardon Blot Out Guilt? 28 Harv.L.Rev. 647; People v. Carlesi, 154 App.Div. 481, 139 N.Y.S. 309; 13 Columb.L.Rev. 418; In re Lavine, 2 Cal.2d 324, 41 P.2d 161; 4 Cal.L.Rev. 236.

\*    \*    \*    \*    \*    \*

"With respect to the precise question before us, namely, the effect of a prior conviction which has been pardoned, the courts are in conflict; but perhaps the weight of authority, and certainly of critical opinion, is to the effect that the pardon is immaterial, and that the defendant may be adjudged a prior offender and given the increased punishment as such. See People v. Carlesi, 154 App.Div. 481, 139 N.Y.S. 309, affirmed 208 N.Y. 547, 101 N.E. 1114; Id., 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843; People v. Murphy, 244 App.Div. 834, 279 N.Y.S. 762; Mount v. Commonwealth, 2 Duv. 93, 63 Ky. 93; Herndon v. Commonwealth, 105 Ky. 197, 48 S.W. 989, 88 Am.St.Rep. 303; State v. Edelstein, 146 Wash. 221, 262 P. 622; 16 C.J. 1342, § 3157; notes, 58 A.L.R. 20, 49; 13 Columb.L.Rev. 418; 14 Minn.L.Rev. 293; 78 U.Pa.L. Rev. 561; 28 Harv.L.Rev. 647, 655; 41 Harv.L.Rev. 918; 5 Fordham L.Rev.

166; 3 So.Cal.L.Rev. 438; 22 Journ. Crim.Law 122. As the court states, in People v. Carlesi, supra, 154 App.Div. 481, 139 N.Y.S. 309, 312: 'The pardon of this defendant did not "make a new man" of him. It did not "blot out" the fact or the record of his conviction. \* \* \* The pardon in this case merely restored the defendant to his civil rights. If it had been granted before his term of imprisonment had been served, it would also have relieved the defendant of that. But it did not obliterate the record of his conviction or blot out the fact that he had been convicted. \* \* \* It relieved the defendant of the consequences which the law attached to his offense. But the defendant is to be punished now solely in consequence of his second offense.

\*    \*    \*    \*    \*    \*

"The other view, holding that the pardoned offense cannot be considered, is based upon the literal application of the theory that the pardon 'blots out guilt,' and 'wipes out the offense,' which is then regarded as never having been committed. See Edwards v. Commonwealth, 78 Va. 39, 49 Am.Rep. 377; State v. Martin, 59 Ohio St. 212, 52 N.E. 188, 43 L.R.A. 94, 69 Am. St.Rep. 762; Tucker v. State, 14 Okl. Cr. 54, 167 P. 637; State v. Lee, 171 La. 733, 132 So. 219; Scrivnor v. State, 113 Tex.Cr.R. 194, 20 S.W.2d 416.'"

█ Instead of blotting out of existence the guilt of an offender, the very acceptance of a pardon is an implied acknowledgment of guilt. Burdick v. United States, 236 U.S. 79, 35 S.Ct. 267, 59 L.Ed. 476. As stated in People ex rel. Prisament v. Brophy, 287 N.Y. 132, 38 N.E.2d 468, 471, "Absolution, by temporal authority, for an offense implies, perhaps, that there is reason to believe the rigid enforcement of the usual penalty for the offense would work injustice." A pardon cannot wipe out the historical fact of the conviction, and as appropriately stated by one court,

it involves forgiveness, and not forgetfulness. State ex rel. Atty. Gen. v. Irby, 190 Ark. 786, 81 S.W.2d 419.

 It is well settled that the constitutional right of every citizen to bear arms in defense of himself and the State, as guaranteed by Article 1, Section 26 of our Constitution, is subject to reasonable regulation under the police powers of the State. Jackson v. State, 37 Ala.App. 335, 68 So. 2d 850.

The provisions of Section 174, supra, prohibiting a person who has been convicted of a crime of violence from owning or possessing a pistol, evinces a clear intention on the part of the legislature to protect the citizens of this State from the actions of that class of persons, who by their past acts, have shown themselves unsuitable and unfit to own and possess pistols. The classification is warranted, and the provision clearly a reasonable exercise of police power. The purpose of Section 174, supra, being to protect the citizens of this State, and not to punish, this appellant is in no position to complain that because of a past act of violence he has placed himself in a class of citizens deemed unfit by the legislature to own or possess a pistol. He has himself determined his civil classification, and must abide by the reasonable restrictions placed upon the class within which he falls.

Further, a pardon has never been deemed to restore offices forfeited, or property or interests vested in others. In re Stephenson, 243 Ala. 342, 10 So.2d 1, supra.

Section 174, supra, became operative April 6, 1936. See Acts of Alabama, Extra Session, 1936, p. 51.

The effect of this act was to vest in the people of Alabama a real and vital social interest designed to enhance their own protection. Such interest vested in the society of this State upon the appellant's conviction of murder in the second degree on 30 March 1939. It cannot properly be deemed to have been vitiated or destroyed by the pardon granted the appellant in 1950.

For the reasons set out above it is our conclusion that the judgment of the lower court is due to be affirmed, and it is so ordered.

Affirmed.