The issue in this case is whether Rolen Henry Burr, who, in 1962 pleaded guilty to the crime of distilling and was sentenced to *Page 1341 
one year and one day in the state penitentiary, with one year's probation, and who, in 1964, was pardoned with an express restoration of his civil and political rights, is disqualified from holding the office of mayor of the Town of Brookside, Alabama. The certificate of pardon issued by the Board of Pardons and Parole restored Burr's "civil and political rights," specifically stating the following:
 "ORDERED that all disabilities resulting from the above stated conviction be and they are hereby removed and the civil and political rights of the above named are restored."
In 1988, Burr was elected to his third term as the Mayor of the Town of Brookside, Alabama, and on February 21, 1990, Frank C. Sokira, William P. Murray, and William Lehman ("the petitioners") filed a petition for a writ of quo warranto, alleging that Burr holds the office of mayor in violation of Ala. Code 1975, § 36-2-1(a)(3), and Ala. Const. (1901), art. IV, § 60. The petitioners filed a motion for summary judgment and argued to the trial court that Burr's conviction for distilling precludes him from holding any public office in the State of Alabama. However, the trial court entered a summary judgment in favor of Burr, thereby denying the petition for the writ of quo warranto. The court stated that "justice would not be served by granting the relief sought by the [petitioners]." The petitioners appealed to this Court.
The petitioners allege that Burr's holding public office violates § 36-2-1(a)(3), which reads as follows:
 "(a) The following persons shall be ineligible to and disqualified from holding office under the authority of this state:
". . . .
 "(3) Those who shall have been convicted of treason, embezzlement of public funds, malfeasance in office, larceny, bribery or any other crime punishable by imprisonment in the state or federal penitentiary and those who are idiots or insane." (Emphasis added.)
That provision formerly appeared at Ala. Code (1940), T. 41, § 5.
Article IV, § 60, of the Alabama Constitution (1901) similarly mandates:
 "No person convicted of embezzlement of the public money, bribery, perjury, or other infamous crime, shall be eligible to the legislature, or capable of holding any office of trust or profit in this state." (Emphasis added.)
At the time Burr pleaded guilty to distilling, the Alabama legislature had defined the crime of distilling in Ala. Code (1940), T. 29, § 103, and expressly made distilling a felony, punishable by at least one year in the penitentiary. That section provided:
 "Any person . . . who shall, within this state, distill, make or manufacture any alcoholic . . . liquors or beverage, any part of which is alcohol, shall be guilty of a felony and, upon conviction thereof, be punished by imprisonment at hard labor in the penitentiary for not less than one year nor longer than five years . . . ."
Applying Ala. Code 1975, § 36-2-1(a)(3), and Ala. Const. (1901), art. IV, § 60, to Burr's conviction, it is clear that his guilty plea to the felony of distilling disqualified him from holding any public office in the State of Alabama.
While these laws specifically address the effect of a felony conviction on a person's qualification to hold public office, they do not address how a pardon that expressly restores to an individual his "civil and political rights" affects that individual's ability to hold public office. Thus, the ultimate issue becomes whether the State's pardon of Burr, expressly restoring his civil and political rights, allows him to hold the office of mayor. In entering summary judgment in favor of Burr, the trial court did not address this legal question except to hold that justice would not be served by granting the writ of quo warranto.
Ala. Code 1975, § 36-9-2, as amended, states that an individual convicted of an infamous crime while holding publicoffice shall not be restored to public office:
 "When any person holding any office or place under authority of this state is sentenced by any court of the United *Page 1342 
States, of this state or of any other state to imprisonment in the penitentiary or hard labor for the county, his office or place shall be vacated from the time of the conviction. If the judgment is reversed, new trial granted, or judgment notwithstanding the verdict is rendered, he shall be restored to office; but, if pardoned, he shall not be restored to office." (Emphasis added.)
The only direction provided regarding an individual who is pardoned prior to holding public office is found in Amendment No. 38 to the Ala. Const. (1901), which states that "No pardon shall relieve from civil and political disabilities unlessspecifically addressed in the pardon." (Emphasis added.)
Chief Justice Marshall, writing for the United States Supreme Court, recognized that "a pardon is an act of grace, proceeding from the power entrusted with the execution of the laws, which exempts the individual, on whom it is bestowed, from the punishment the law inflicts for a crime he has committed."United States v. Wilson, 7 Pet. 150, 159, (32 U.S.),8 L.Ed. 640 (1833). In Ex parte Garland, 4 Wall. 333, 380-81 (71 U.S.),18 L.Ed. 366 (1866), Justice Field, writing for the United States Supreme Court, expressed the following view of the effect of a pardon:
 "A pardon reaches both the punishment prescribed for the offense and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense. . . . [I]t removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.
 "There is only this limitation to its operation; it does not restore offices forfeited, or property or interests vested in others in consequence of the conviction and judgment."
This Court followed the language of Justice Field in decidingHogan v. Hartwell, 242 Ala. 646, 7 So.2d 889 (1942). In Hogan, this Court considered whether an individual who had been convicted of a felony and subsequently had been pardoned and given "all Alabama Civil and Political Rights" was eligible to hold the office of city commissioner of Mobile. Chief Justice Gardner, writing for this Court, stated that Ala. Const. (1901), art. IV, § 60, did not forever prohibit one convicted of a felony from holding office in this State. Quoting 39 Am.Jur. 554, 556, he continued:
 " 'The doctrine has generally been accepted by the court; that a full and unconditional pardon restores to the offender the customary civil rights which ordinarily belong to a citizen' and this includes restoration to the 'pardoned offender his eligibility for state elective office which was forfeited by his conviction.' " (Emphasis added, citation omitted.)
242 Ala. at 651, 7 So.2d at 892.
During the same year that this Court decided Hogan, this Court quoted Justice Field's analysis of a pardon in In reStephenson, 243 Ala. 342, 10 So.2d 1 (1942). In that case, Stepheson, an attorney, was convicted of forgery and was sentenced to the penitentiary for a period of not less than two years nor more than four years. When Stephenson received a full pardon, restoring his civil and political rights, he filed a petition for reinstatement as an attorney. However, his Court refused to reinstate him and affirmed the ruling of the Board of Commissioners of the Alabama State Bar holding that "the pardon and restoration of his political and civil rights do not of themselves restore the petitioner to the office of an attorney. They merely open the door that would otherwise be barred to him" 243 Ala. at 346, 10 So.2d at 3.
This Court concluded that a prerequisite to the admission to the bar is a good moral character, and that "an application for reinstatement of an attorney, after the judgment of disbarment has become final, must be treated as an application for admission to the practice, and not as an application to vacate the order of disbarment." 243 Ala. at 346, 10 So.2d at 4. In setting the test *Page 1343 
for reinstatement to the bar, this Court stated that it would look at the life and conduct of the attorney prior to disbarment, and the reasons for the disbarment, and would consider whether the attorney's life and conduct since that time satisfy the Court that, if restored to the bar, he will be upright, honorable, and honest in his dealings. In 1958, this Court effectively reversed its holding in Hogan when it affirmed the decision of the Court of Appeals in Mason v.State, 39 Ala. App. 1, 103 So.2d 337 (1956), aff'd, 267 Ala. 507, 103 So.2d 341 (1958), cert. denied, 358 U.S. 934,79 S.Ct. 323, 3 L.Ed.2d 306 (1959). In Mason, the defendant was convicted of owning or possessing a pistol after his previous conviction of second degree murder, for which he had been pardoned. Judge Harwood, writing for the Court of Appeals, called the issue "original, as far as our decisions are concerned," and attempted to distinguish the case from Hogan.39 Ala. App. at 2, 103 So.2d at 338. The Court of Appeals recited what this Court had said in Hogan:
 " ' "[A] person . . . is relieved from the legal consequences of a specific crime" ', and . . . ' "a full and unconditional pardon restores to the offender the customary civil rights which ordinarily belong to a citizen." ' "
39 Ala. App. at 3, 103 So.2d at 339.
However, the Court of Appeals stated that this language "constitute[d] broad generalizations and like all statements of generalities, will lead to paradoxical conclusions if mechanically and literally applied to every factual situation."39 Ala. App. at 3, 103 So.2d at 339. That court, construing the language of the Uniform Firearms Act, Ala. Acts 1936, Extra Session, Act No. 82, p. 51 (Ala. Code (1940), T. 14, § 174), stated that a pardon of a convicted murderer simply "involved forgiveness and not forgetfulness"[1] and that by enacting the Firearms Act, the legislature intended to "vest in the people of Alabama a real and vital social interest designed to enhance their own protection." 39 Ala. App. at 5, 103 So.2d at 341. In affirming this decision, this Court apparently adopted the principle that it retained the power to decide which unconditional pardons actually restored civil and political rights and which unconditional *Page 1344 
pardons did not. Justice Coleman dissented, recognizing that prior to 1939, the Ala. Const. (1901), § 124, placed the pardoning power in the governor. That section provided as follows:
 "The governor shall have power . . . to grant pardons. . . . Pardons in cases of felony and other offenses involving moral turpitude shall not relieve from civil and political disabilities, unless approved by the Board of Pardons and specifically expressed in the pardon."
In 1939, the people ratified Amendment 38 to the Alabama Constitution (1901); that amendment expressly gave to the legislature the "power to provide for and to regulate the administration of pardons and paroles." That amendment stated that "no pardon shall relieve from civil and political disabilities unless specifically expressed in the pardon." (Emphasis added.) Justice Coleman argued that when the pardondoes expressly restore civil rights, "then the person pardoned is relieved from all loss of civil rights, unless and except as the pardon itself may limit restoration." 267 Ala. at 509,103 So.2d at 343. He concluded that the legislature had granted to the Board of Pardons and Parole the power to grant pardons after conviction and that "[t]he decision of the Court of Appeals holds, in effect that [the Firearms Act] fastens a condition on every otherwise unconditional restoration of civil and political rights granted by the Board to persons convicted of a crime of violence." 267 Ala. at 509, 103 So.2d at 343.
Nearly 30 years after Justice Coleman's dissent inMason, this Court, in Randolph County v. Thompson,502 So.2d 357 (Ala. 1987), advanced the holding in Mason, stating that with respect to convictions involving "infamous crimes" a pardon does not restore to the one pardoned the eligibility to hold office. In Randolph County, Thompson sought the governor's appointment as supernumerary sheriff after he had been convicted of voting fraud and had been sentenced to serve three years in the federal penitentiary. However, Thompson's sentence was suspended, and he later received a pardon restoring all of his "civil and political rights." Thompson then brought a declaratory judgment action against the governor, seeking a judgment declaring that he was entitled to the appointment as supernumerary sheriff. The trial court granted his request and the governor eventually appointed Thompson as supernumerary sheriff. This Court reversed, holding that the crime of voting fraud, of which Thompson had been convicted, was an "infamous crime" and therefore that Thompson was ineligible and disqualified from holding the office. This Court further stated that the pardon "removed neither the fact of his conviction nor his moral guilt." 502 So.2d at 367.
The reasoning asserted in Randolph County was similarly applied to city officials in Sumbry v. State ex rel. Grant,562 So.2d 224 (Ala. 1990). In Sumbry, the Board of Pardons and Parole granted a pardon "restoring all civil and political rights" to a city council member in Phenix City, Alabama, after he had been convicted in 1980 of unlawful voter registration and first degree perjury. The trial court determined that Sumbry, who had served two terms as a council member, was excluded from running for city council in the future, his pardon notwithstanding. We affirmed and reemphasized what this Court had stated in Randolph County:
 " 'Because, in Alabama, a pardon eliminates neither the fact of conviction nor the moral guilt accompanying the conviction, we must conclude that a pardon does not restore to one pardoned the eligibility to hold public office." '
562 So.2d at 226.
After a thorough review of the Alabama cases addressing the effect of pardons that expressly restore civil and political rights, we now hold that the better reasoned decision is this Court's previously cited case of Hogan v. Hartwell, and we adopt the opinion of United States Supreme Court Justice Field, in Ex parte Garland, where he stressed that a pardon, expressly restoring to an individual his civil and political rights,removes the disabilities that accompany a conviction. Justice Field wrote that the effect of the pardon is "to relieve the petitioner from all penalties and disabilities *Page 1345 
attached to the offense" and said that "to exclude him, by reason of that offense, from continuing in the enjoyment of a previously acquired right, is to enforce a punishment for that offense notwithstanding the pardon." Ex parte Garland, 4 Wall. (71 U.S.) at 381.
By readopting this Court's decision in Hogan, we recognize that a pardon that restores to an individual all civil rights and political privileges necessarily nullifies all legal punishment for the offense. In other words, if the conviction incorporates certain civil and political disqualifications, then a pardon that specifically revives all civil and political rights must certainly remove any and all legal incapacities. See Ala. Const. (1901), § 124, amend. No. 38.
Thus, we expressly reverse our holding in Sumbry. However, we distinguish our holding in Randolph County. As noted above, inRandolph County, Thompson applied to the governor for an appointment to the office of supernumerary sheriff. Specifically applying the rationale established in Mason, this Court held that Thompson was ineligible and disqualified from holding the office of supernumerary sheriff. We now hold that the decision in Mason is erroneous and, in light of the better reasoned Hogan decision, we hold that Thompson's pardon restoring his civil and political rights necessarily restored his eligibility to hold public office. However, the pardon, although restoring Thompson's eligibility to hold a position of trust, could not compel the governor to appoint him to the position of supernumerary sheriff. Therefore, we reverseRandolph County only to the extent that it relies on the rationale in Mason.
In this case, the trial court stated in its summary judgment "that justice would not be served by granting the relief sought by Plaintiffs." Where the trial court's legal reasoning is lacking, but its judgment is nonetheless proper, the judgment will not be disturbed on appeal. Progressive Specialty Ins. Co.v. Hammonds, 551 So.2d 333 (Ala. 1989). Thus, we hold that the pardon, expressly restoring all of Burr's civil and political rights, returned to him each civil and political privilege taken away by his felony conviction and that, as a result, Burr is not without capacity or authority to hold the office of mayor of the Town of Brookside, Alabama, contrary to the appellants' argument in their petition for the writ of quo warranto. Therefore, the summary judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, KENNEDY and INGRAM, JJ., concur.
HOUSTON and STEAGALL, JJ., concur specially.
[1] I have researched this expression and have found that the Federal District Court for the Northern District of Illinois may have been the first court to describe a pardon in this manner in United States v. Swift, 186 F. 1002, 1017 (1911). InSwift, the defendants, having been indicted for violating the Sherman Act, claimed that because they had given the Commissioner of Corporations information and evidence in 1904, they became immune from prosecution in 1905. The court disagreed and held:
 "There is nothing in the law of pardons which will warrant the court in reaching a conclusion that the amnesty or immunity claimed to be afforded by the law to the defendants in 1904 wiped out the existence of the transactions, matters, and things concerning which they testified. The difference between a crime committed and forgiven, and its physical occurrence, must not be overlooked. . . .
 "A pardon or amnesty secures against the consequences of one's acts, and not against the acts themselves; it involves forgiveness, not forgetfulness." (Emphasis added.)
The court in Swift adopted this reasoning from Ex parteGarland, 71 U.S. 333, 18 L.Ed. 366 (1867), in which a Confederate general challenged the act of Congress prescribing an oath that the deponent has never voluntarily borne arms against the United States as a qualification for admission to practice law before the Supreme Court. The Court held that the oath attempted to supplant what the pardon had removed and struck down the congressional act requiring the oath. The Court in Swift believed that this decision recognized that the general's actions had not been forgotten but merely forgiven by the pardon.
The Supreme Court of Arkansas again applied this phrase inState ex rel. Attorney General v. Irby, 190 Ark. 786,81 S.W.2d 419 (1935). In that case, the Arkansas attorney general challenged Irby's privilege to hold the office of county and probate judge because of his prior conviction of embezzlement against the United States. Finding for the attorney general, the court held that "the issuance and acceptance of a pardon within [itself] irrevocably acknowledges a conviction of the crime pardoned and has the effect only of restoring civil rights as distinguished from political privileges."190 Ark. at 797, 81 S.W.2d at 424. Quoting from 46 C.J. 1192, the Arkansas court concluded:
 " '. . . a pardon implies guilt, it does not obliterate the fact of the commission of the crime, and the conviction thereof; it does not wash out the moral stain; as has been tersely said it involves forgiveness and not forgetfulness.' " (Emphasis added.)
Judge Harwood utilized this language in Mason, when he overruled the reasoning set out in Hogan v. Hartwell.