On Application for Rehearing.
This court's opinion of April 28, 2000, is hereby withdrawn and the following is substituted therefor.
The appellant, Nathan Casey, appeals from the trial court's denial of his Rule 32, Ala.R.Crim.P., petition for postconviction relief. The appellant was convicted, on December 7, 1982, of first-degree robbery, and the trial court sentenced him as a habitual offender to life imprisonment without parole. On appeal, this court affirmed his conviction and his sentence. Casey v. State, 456 So.2d 1161 (Ala.Crim.App. 1984).
The appellant then filed his first Rule 32 petition, contending that he had been denied effective assistance of counsel at trial and on appeal; that the trial court lacked jurisdiction to render the judgment or to impose the sentence; and that his sentence exceeded the maximum allowed by law. The trial court denied the petition, and this court affirmed the denial in an unpublished memorandum.
The appellant then filed his second Rule 32 petition, alleging again that the trial court lacked jurisdiction to render a judgment or to impose the sentence; that the United States Constitution and the Alabama Constitution required a new trial; and that newly discovered material facts required that his conviction and sentence be overturned. The trial court denied that petition because the claims were barred by the limitations period of Rule 32. The appellant appealed and this court dismissed the appeal because the appellant failed to file a brief.
The appellant subsequently filed the present Rule 32 petition, his third petition. The appellant again alleged that the Constitutions of the United States and of the State of Alabama require that he be given a new trial. He also again alleged that the trial court was without jurisdiction to render the judgment or to impose the sentence. The appellant filed a brief in support of his petition, in which he alleged that, because he had received in 1974 a full and unconditional pardon of six convictions, those six convictions could not be used, under the Habitual Felony Offender Act, to enhance his 1982 conviction for robbery.[1] The State responded that the appellant's petition was due to be *Page 170 
dismissed, alleging that the petition was without merit and that it also was precluded under Rules 32.2(b) and 32.2(a)(4) and (5). The trial court summarily denied the petition, finding that the appellant's claims lacked merit. Citing Mason v. State, 39 Ala. App. 1, 103 So.2d 337
(1956), aff'd, 267 Ala. 507, 103 So.2d 341 (1958), cert. denied,358 U.S. 934 (1959), and Johnson v. State, 421 So.2d 1306 (Ala.Crim.App. 1982), the trial court held that a pardon does not eliminate a conviction and that the convictions as to what the appellant had been pardoned had been properly used to enhance his sentence as a habitual offender. The trial court also held that the issues raised in the petition were precluded because the petition was successive and because those issues could have been, but were not, raised at trial or on appeal.
The appellant makes the following arguments on appeal: (1) that his petition was not precluded because, he says, he stated a jurisdictional claim; (2) that he could not be sentenced as a habitual offender without violating prohibitions against ex post facto laws and rulings because, he says, he was fully and unconditionally pardoned in 1974 pursuant to a "contract" with the Alabama Board of Pardons and Paroles; and (3) that the Habitual Felony Offender Act could not be applied in sentencing him without violating ex post facto prohibitions because, he says, he did not know that any offense committed after his pardon would be impacted by the Habitual Felony Offender Act.
A review of the record reveals that the trial court's summary denial is due to be affirmed, on the ground that the appellant failed to state a meritorious claim.[2] Summary disposition of a petition is proper under Rule 32.7(d), Ala.R.Crim.P., if the court determines that the petition is insufficiently specific or precluded or that it fails to state a claim or that no material issue of fact or law entitles the petitioner to relief. The appellant failed to state a claim that his protection against ex post facto laws had been violated. The case cited by the appellant, State ex rel. Sokira v. Burr, 580 So.2d 1340 (Ala. 1991), had not been decided when he was sentenced in 1982 as a habitual offender.
The theory behind the prohibition against ex post facto laws is that no one should be punished for conduct he has not been warned was criminal conduct. Williams v. State, 393 So.2d 492 (Ala.Crim.App. 1981). Moreover, the trial court was correct in determining that a pardon that restores a defendant's civil and political rights is irrelevant for purposes of considering prior convictions for sentence-enhancement purposes.
There are two lines of Alabama cases that discuss the effects of pardons. The first line of cases, which addresses pardons by the Alabama Pardons and Paroles Board, concerns the restoration of a defendant's civil and political rights. In Hogan v. Hartwell, 242 Ala. 646,7 So.2d 889, 891 (1942), the Alabama Supreme Court held that a full and unconditional pardon from the Alabama Board of Pardons and Paroles relieves "the legal consequences of a specific crime" and restores a defendant's customary civil and political rights, including his eligibility for State elective office. This holding was effectively overruled by the Court's subsequent affirmance of the *Page 171 
Court of Appeals' decision in Mason v. State, 39 Ala. App. 1, 103 So.2d 337
(1956), aff'd, 267 Ala. 507, 103 So.2d 341 (1958), cert. denied,358 U.S. 934 (1959). The Court of Appeals held that, because the people of Alabama have a vested social interest in their own protection, a full pardon with restoration of all civil and political rights does not vitiate or destroy a conviction of a crime of violence or restore a person's right to possess a pistol.
In State ex rel. Sokira v. Burr, 580 So.2d at 1344, the Alabama Supreme Court stated that Mason had been erroneously decided and that Hogan was the better reasoned decision. The Court noted that, in affirming the judgment in Mason, the Court had "apparently adopted the principle that it retained the power to decide which unconditional pardons actually restored civil and political rights and which unconditional pardons did not." Sokira, 580 So.2d at 1343. The Court further noted that, inRandolph County v. Thompson, 502 So.2d 357 (Ala. 1987), and Sumbry v.State ex rel. Grant, 562 So.2d 224 (Ala. 1990), the Court had advanced the Mason holding by stating that as to convictions of "infamous crimes" a pardon did not restore to the one pardoned eligibility to hold public office. Sokira, 580 So.2d at 1344. Therefore, the Sokira Court held that a court could not choose which rights would be restored, i.e., it would not conclude that the right to possess a pistol, or the right to hold public office, was a right that should not be restored. A court cannot carve out certain rights that will not be restored, because a pardon is intended to restore each civil and political right taken away by the felony conviction.
The Sokira Court held that a pardon that restores all of a defendant's civil and political rights removes the disabilities that accompany the prior conviction, thereby enabling the defendant in that case to hold public office. Id. The Court expressly readopted its decision in Hogan, overruled its decision in Sumbry, and overruled its decision in RandolphCounty to the extent that the decision in Randolph County had relied on the rationale in Mason. Sokira, 580 So.2d at 1345. The Court also expressly adopted the opinion of United States Supreme Court Justice Field in Ex parte Garland, 71 U.S. (4 Wall.) 333, 380-81 (1866). Sokira,580 So.2d at 1344. Justice Field, writing for the United States Supreme Court, stated the following view of the effect of a pardon:
 "`A pardon reaches both the punishment prescribed for the offense and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out the existence of the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense. . . . [I]t removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.
 "`There is only this limitation to its operation; it does not restore offices forfeited, or property or interests vested in others in consequence of the conviction and judgment.'"
All of the foregoing decisions, including the opinion of Justice Field,[3] address only the restoration of civil or political rights affected by the pardoned conviction. None involve the use of the pardoned conviction for enhancement of punishment upon the conviction of a subsequent offense. However, the second line of State *Page 172 
Pardons and Paroles Board cases concerns the use of pardoned convictions for enhancement purposes. In Johnson v. State, 421 So.2d 1306
(Ala.Crim.App. 1982), this court held that, although the Alabama Board of Pardons and Paroles had issued a certificate restoring the defendant's civil and political rights, his nine prior convictions could be used to enhance his punishment for a subsequent offense. This Court held that the certificate did not constitute a pardon under § 15-22-36, Ala. Code 1975, as amended, because it stated only that Johnson's civil and political rights had been restored, not that he had been pardoned for the offense.
 The appellant in the present case failed to include in the record on appeal a copy of his certificate or pardon. However, even if the appellant had been granted a full pardon, his prior convictions still could be used to enhance his punishment for the subsequent offense. In Johnson v. State, 421 So.2d at 1312-13, this court stated:
 "[E]ven if [the certificate] were a full pardon, it would not, in our judgment, preclude those convictions from being used to enhance the appellant's punishment. See Mason v. State, 39 Ala. App. 1, 103 So.2d 431 (1958). In Mason, the sole question raised was whether the appellant's possession of a pistol, after conviction for a crime of violence was illegal in view of the pardon that Mason had been granted. The court observed that the question had been reviewed in cases dealing with punishment imposed under multiple offender statutes. The court cited People v. Biggs, 9 Cal.2d 508, 71 P.2d 214, 116 A.L.R. 205, and quoted the following excerpts:
 "`"It is universally established that a pardon exempts the individual from the punishment which the law inflicts for the crime which he has committed; and generally speaking, it also removes any disqualifications or disabilities which would ordinarily have followed from the conviction. To say, however, that the offender is a `new man,' and as `innocent as if he had never committed the offense,' is to ignore the difference between the crime and the criminal. A person adjudged guilty of an offense is a convicted criminal, though pardoned; he may be deserving of punishment, though left unpunished; and the law may regard him as more dangerous to society than one never found guilty of crime, though it place no restraints upon him following his conviction. The criminal character or habits of the individual, the chief postulate of habitual criminal statutes, is often as clearly disclosed by a pardoned conviction as by one never condoned. . . .'
"`". . . .
 "`"With respect to the precise question before us, namely, the effect of a prior conviction which has been pardoned, the courts are in conflict; but perhaps the weight of authority, and certainly of critical opinion, is to the effect that the pardon is immaterial, and that the defendant may be adjudged a prior offender and given the increased punishment as such. See People v. Carlesi, 154 A.D. 481, 139 N.Y.S. 309, affirmed, 208 N.Y. 547, 101 N.E. 1114; Id., 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843; People v. Murphy, 244 A.D. 834, 279 N.Y.S. 762; Mount v. Commonwealth, 2 Duv. 93, 63 Ky. 93; Herndon v. Commonwealth, 105 Ky. 197, 48 S.W. 989, 88 Am.St.Rep. 303; State v. Edelstein, 146 Wn. 221, 262 P. 622; 16 C.J. 1342, § 3157; notes, 58 A.L.R. 20, 49; 13 Columb. L.Rev. 418; 14 Minn. L.Rev. 293; 78 U.Pa. L.Rev. 561; 28 Harv. L.Rev. 647, 655; *Page 173 
 41 Harv. L.Rev. 918; 5 Fordham L.Rev. 166; 3 So.Cal. L.Rev. 438; 22 Journ.Crim. Law 122. As the court states in People v. Carlesi, supra, 154 A.D. 481, 139 N.Y.S. 309, 312: `The pardon of the defendant did not "make a new man" of him. It did not "blot out" the fact or the record of his conviction. . . . The pardon in this case merely restored the defendant to his civil rights. If it had been granted before his term of imprisonment had been served, it would also have relieved the defendant of that. But it did not obliterate the record of his conviction or blot out the fact that he had been convicted. . . . It relieved the defendant of the consequences which the law attached to his offense. But the defendant is to be punished now solely in consequence of his second offense.
"`". . . .
 "`"The other view, holding that the pardoned offense cannot be considered, is based upon the literal application of the theory that the pardon `blots out guilt' and `wipes out the offense,' which is then regarded as never having been committed. See Edwards v. Commonwealth, 78 Va. 39, 49 Am.Rep. 377; State v. Martin, 59 Ohio St. 212, 52 N.E. 188, 43 L.R.A. 94, 69 Am.St.Rep. 762; Tucker v. State, 14 Okla. Cr. 54, 167 P. 637; State v. Lee, 171 La. 733, 132 So. 219; Scrivnor v. State, 113 Tex.Crim. R., 20 S.W.2d 416."'"
See Bush v. State, 421 So.2d 1352 (Ala.Crim.App. 1982) (citing Johnson
and holding that a certificate restoring to the one pardoned civil and political rights does not preclude the use of the felony conviction to enhance punishment as a habitual offender).
In its decision in Sokira overruling Mason and adopting Justice Field's opinion, the Alabama Supreme Court stated:
 "By readopting this Court's decision in Hogan, we recognize that a pardon that restores to an individual all civil rights and political privileges necessarily nullifies all legal punishment for the offense. In other words, if the conviction incorporates certain civil and political disqualifications, then a pardon that specifically revives all civil and political rights must certainly remove any and all legal incapacities."
580 So.2d at 1345.
Thus, Sokira spoke strictly to the punishments and incapacities resulting from this deprivation of rights. Enhancement of a sentence upon application of the Habitual Felony Offender Act does not involve a civil or political disqualification or any legal incapacity. Moreover, a pardon is intended to be a vehicle for the restoration of rights and privileges that were denied or forfeited or affected by the conviction of a crime. There is no legal right to commit a crime vested in anyone which would be subject to restoration by a pardon. In State v. Adams, 355 So.2d 917, 922
(La. 1978), the Louisiana Court held that the State's automatic pardon provision did not preclude consideration of a felony conviction as to which one was pardoned in adjudicating a person as a habitual offender. The Court cited with approval the following comment of Chris Roy, a delegate to that State's 1973 Constitutional Convention:
 "[A] pardon simply restores your rights to vote and to citizenship, but it doesn't change something that is or was. It doesn't change the fact that you're white or you're black or orange or red or whatever you have. It simply restores you to the rights that you had before. You didn't have a right before to commit *Page 174 
crime, so you still don't have one in the future to commit it. . . . (citation omitted)."
In the present case, the appellant had 10 prior convictions — 2 of those were not considered for enhancement because they were uncounseled, 2 others were not considered because the State withdraw its offer as to them, and the remaining 6 were pardoned by contract. It is clear that the pardons were not intended to allow the appellant, upon being convicted for an eleventh time, to come before the justice system as a first-time offender.
For the above-stated reasons, the judgment imposed by the trial court is due to be, and it is hereby, affirmed.
OPINION OF APRIL 28, 2000, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION GRANTED; AFFIRMED.
Cobb, Baschab and Wise, JJ., concur. Shaw, J., concurs in part and dissents in part, with opinion.
[1] The State originally offered evidence purporting to show 10 prior convictions. The offer of two of them was withdrawn, and two others were determined to have been uncounseled. Casey v. State, 456 So.2d 1161
(Ala.Crim.App. 1984).
[2] The petition cannot be affirmed as successive because no evidence of a prior judgment on the merits appears in the record on appeal. Blountv. State, 572 So.2d 498 (Ala.Crim.App. 1990). The petition cannot be affirmed as precluded under Rules 32.2(a)(4) and (5), Ala.R.Crim.P., because these grounds conflict, and pleading both is a factual impossibility.Hughley v. State, 597 So.2d 764 (Ala.Crim.App. 1992).
[3] In Ex parte Garland, an attorney sought to resume the practice of law without taking a special loyalty oath after he had been pardoned for engaging in a rebellion.