ALMON, Justice.
This is an appeal from a summary judgment granted in favor of defendant-appel-lee, Alabama Power Company. Mrs. Edwin Staub, Jr., filed suit against Alabama Power Company alleging that she, as the dependent widow of Edwin John Staub, Jr., is entitled to benefits under a company funded pension plan.[1] We affirm the judgment of the trial court.
Mr. Staub was employed by Alabama Power for approximately 22 years prior to his death on April 21, 1975, 15 days after turning age 54. Mr. Staub, on November 1, 1974, approximately 6 months before his death, had designated his wife as provisional payee under the provisions of the pension plan.[2] Appellant acknowledges in her com *388 plaint that “[t]he plan provides that the designation of a ‘provisional payee’ will be.come effective one (1) year from the date of such designation or on the 55th birthday of *389 the employee whichever is later,” and that Mr. Staub’s unfortunate death “terminated Mr. Staub’s service to the defendant prior to his 55th birthday and prior to one (1) year after the designation.” In other words, appellant acknowledges that by the unambiguous term of the plan, she is not entitled to any benefits.
Section VII of the plan (see footnote 1) provides that an employee who has 20 years of service or 15 years of service and is over age 50 (either of which would cover Mr. Staub) may terminate his services for any reason other than death or transfer to an affiliated company and still receive, “commencing at Normal Retirement Date” (age 65), retirement income. Under Section VII the designation of a provisional payee becomes inoperative upon termination of the employee’s services unless the termination occurs within 10 years prior to Normal Retirement Date (age 65) and the termination occurred on or after the effective date of the provisional payee election. Thus, Mr. Staub could have terminated employment after reaching age 55 and his provisional payee designation would have been in ef-feet as the one year period would have elapsed.
The complaint alleges that Mr. Staub had “vested rights” and (1) that the requirements that an employee who has vested retirement benefits must live to a certain age or a certain time after his designation of a provisional payee bears no reasonable relation to the plan and is arbitrary and capricious, (2) that the pension plan is a form of compensation and to deprive the employee’s estate and dependents of vested benefits is inequitable and unjust,[3] and (3) that the limitations and restrictions are null and void due to past arbitrary exceptions to the provisions of the plan. Appellant contends that his complaint has become the “law of the case” due to Judge Ingram Beasley’s overruling of Alabama Power’s motion to dismiss for failure to state a cause of action, citing, inter alia, In re Midwest Milk Monopolization Litigation, 380 F.Supp. 880 (W.D.Mo.1974); the motion for summary judgment was later granted by Judge Russell McElroy. According to appellant, she need now only show a scintilla of evidence to support a reversal.
*390 This is not the case. On appeal we will affirm a decision of a trial judge if it is correct, though it be for the wrong reason.
“Plaintiff contends that Judge Miner erred in overruling Judge Sullivan’s decision, D.C., 144 F.Supp. 480, denying defendants’ motion to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted. Plaintiff’s counsel speak of Judge Sullivan’s opinion as ‘the law of the case’. . The action of Judge Miner was the entry of a summary judgment and involved not merely the complaint which was before Judge Sullivan, but also offers of proof and evidence submitted only to Judge Miner.
.“Regardless of the impact of my law-of-the-case rule, our duty is to determine whether the judgment of Judge Miner is correct. In fact, we should sustain any judgment from which an appeal has been taken if it is supported by the record and the law, regardless of whether the lower court has ruled erroneously or has ruled at all on that ground. Jaffke v. Dunham, 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314. Obviously we cannot be expected to reverse a correct decision by one district judge simply because we find that it is contrary to a prior ruling by another district judge in the same case, i. e. contrary to the ‘law of the case’ ”. Parmelee Transportation Company v. Keeshin, 292 F.2d 794, 797 (7 Cir. 1961).
Being actuarially based, the plan assumes that a certain portion of the employees will die without receiving any benefits or at least without receiving as many benefits as others. Without deciding whether the appellant has stated a cause of action, we see nothing arbitrary, as a matter of law, in the requirement that an employee reach a certain age — in this case, age 55— before he or his spouse, under the provisional payee provision, may receive retirement income.
Nor is the requirement unreasonable that a provisional payee be designated one year in advance of the date such designation becomes operative. If a provisional payee provision were immediately effective, the employee could make a deathbed designation and in effect require the funding of the plan to be based not only on the actuarial lives of the employees, but also their spouses.
The effective designation of a provisional payee lowers the amount of retirement benefits the employee may receive during his retirement years. 'In essence, the benefits the employee is actuarially likely to receive is spread over actuarial combined lives of him and his spouse. As we read Section VI, paragraph 2, a spouse will receive benefits if the employee dies with an effective provisional payee designation even if the employee had not retired, but were of retirement age. By paragraph 4 of Section VI, if the employee rescinds his designation of a provisional payee, his retirement income is reduced to reflect the added protection he had and the added risk the fund had during the time the provisional payee designation was in effect.
In our judgment, what this court said in Avondale Mills v. Saddler, 292 Ala. 134, 290 So.2d 173 (1974) applies equally well here:
“It is our conclusion that the integrity of the trust indenture as written must be upheld. We cannot and should not rewrite it. First National Bank of Birmingham v. Adams, 281 Ala. 404, 203 So.2d 124 (1967). The rights of the beneficiaries of the trust must be determined by the trust provisions. See Bailey v. Rockwell Spring and Axle Co., 13 Misc.2d 29, 175 N.Y.S.2d 104 (1958); Green v. Copco Steel, 22 Mich.App. 16, 176 N.W.2d 690 (1970). The trust indenture clearly states the requirements which an employee must meet in order to qualify for retirement benefits. . . . ”
As an example of an arbitrary exception to the plan made by the Retirement Board, appellant points to the case of another employee who did not have “vested rights” under Section VI, but who was given a leave of absence with pay a few months before reaching age 65 so that he might accept another position and still be eligible *391 for retirement benefits upon reaching age 65. Without commenting on the propriety of such action, which is not the question before us, we note that the last paragraph of Section II, paragraph 2, provided for such action:
“An employee who is on authorized leave of absence and receiving his regular pay shall be considered a full-time regular employee and shall be included in the Plan if and when he meets the requirements of subsection 1 of this Section regardless of whether he is, on the date of such inclusion, on such leave of absence.”
The judgment of the trial court is affirmed. Assuming, without deciding, that the appellant has stated a cause of action, the appellant has not raised a genuine issue of material fact. (Rule 56, Alabama Rules of Civil Procedure).
The judgment is hereby affirmed.
AFFIRMED.
TORBERT, C. J., and BLOODWORTH, JONES and EMBRY, JJ., concur.

. Of passing interest is the fact that Mrs. Staub received approximately $60,000 in life insurance proceeds from policies funded partially by the Alabama Power Co.

. “PENSION PLAN OF ALABAMA POWER CO.
“SECTION I. DEFINITIONS
“ ‘Normal Retirement Date’ — The first day of the month following an employee’s 65th birthday.
“ ‘Early Retirement Date’ — The first day of the month following the retirement of an employee on or after his 55th birthday and before his 65th birthday.
“SECTION II. ELIGIBILITY
“An employee who is on authorized leave of absence and receiving his regular pay shall be considered a full-time regular employee and shall be included in the Plan if and when he meets the requirements of subsection 1 of this Section regardless of whether he is, on the date of such inclusion, on such leave of absence.
“SECTION IV. RETIREMENT
“3. Retirement at Early Retirement Date. An employee having at least 20 years of Accredited Service (including any Accredited Service to which he is entitled under the pension plan of any company or companies now affiliated or associated with the Company, from which such employee was transferred pursuant to subsection 5 of Section III and including for the purposes of this subsection 3, Accredited Service under the Retirement Income Plan for Employees of Birmingham Electric Company, as amended) may elect to retire on an Early Retirement Date on or after his 55th birthday and before his 65th birthday (subject, however, to the consent of the Company if he has not attained age 60) and to have his Retirement Income under the Plan commence on that date.
“9. Termination of Retirement Income. The monthly payment of the Retirement Income will cease with the last payment preceding the retired employee’s death; subject, however, to the continuation of payments to a surviving Provisional Payee, if one has been designated, which likewise will cease with the last payment preceding the death of the Provisional Payee. There shall be no benefits payable under the Plan on behalf of any employee whose death occurs prior to his retirement, except as otherwise provided in Section VI with respect to a Provisional Payee of an employee. Following the death of an employee and of his Provisional Payee, if any, no further payments will be made under the Plan on account of such employee or to his estate.
“SECTION VI. PROVISIONAL PAYEE
“1. An employee who desires to have his Retirement Income payable on or after the effective date of the designation of a Provisional Payee as hereinafter provided actuarially adjusted to provide, at his option, either
“(a) a reduced amount payable to him for his lifetime with the provision that such reduced amount will be continued after his death to his spouse as Provisional Payee until the death of such Provisional Payee, or
“(b) a reduced amount (greater than the amount in (a) above) payable to him for his lifetime with the provision that one-half of such reduced amount will be continued after his death to his spouse as Provisional Payee until the death of such Provisional Payee, may, subject to the conditions outlined below, and in lieu of any other form or method of payment of Retirement Income, designate such spouse as a Provisional Payee and at the same time elect to have payments made in accordance with the provisions of this Section.
“2. Adjustment of Retirement Income by reason of the designation of a Provisional Payee in the event of an employee’s retirement on or after his 55th birthday will be based on the Retirement Income payable on his Early Retirement Date or Retirement Income payable on his Normal Retirement Date, as the case *388 may be. If an employee who has designated a Provisional Payee dies prior to his retirement but añer the effective date of his Provisional Payee designation, there will be payable to his Provisional Payee for life Retirement Income in a reduced amount in accordance with the employee’s election of payments to be made to his Provisional Payee añer the death of the employee under (a) or (b), as the case may be, of subsection 1 of this Section VI. The reduced amount payable to the Provisional Payee shall be based on the employee’s Accrued Retirement Income at the date of his death actuarially adjusted.
“Adjustments of Retirement Income shall be made in accordance with such actuarial tables as may be adopted by the Retirement Board and in use at the time of the employee’s death or at his Early or Normal Retirement Date, as the case may be.
“3. An election of payment and designation of a Provisional Payee in accordance with this Section shall be made in writing at the same time on a form prescribed by the Retirement Board and delivered to it. The election and designation shall specify its effective date which shall not be sooner than one year from the date the executed form is received by the Retirement Board or the employee’s 55th birthday, whichever is later. The effective date may not be later than the date of commencement of payments in accordance with this Section VI.
“If an employee’s service terminates for any reason (including early retirement) prior to the effective date of an election and designation, the election and designation made pursuant to this Section shall be inoperative and the regular provisions of the Plan shall again become applicable as if a Provisional Payee had not been designated.
“4. An election and designation made pursuant to this Section shall be inoperative and the regular provisions of the Plan shall again become applicable as if a Provisional Payee had not been designated if, prior to the commencement of any payments in accordance with this Section, (a) an employee’s Provisional Payee shall die, except as provided in subsection 5 of this Section VI, or (b) the employee and the Provisional Payee shall be divorced, the divorce shall have become final and the Retirement Board shall have received the written request of the employee that the election and designation be inoperative, or (c) the Retirement Board shall have received the written election of the employee to rescind his election of payment and designation of a Provisional Payee. If such election to rescind is made by the employee his Accrued Retirement Income shall be actuarially reduced to refíect the protection afforded the employee by the Provisional Payee designation during the period from its effective date to the date of the Retirement Board’s receipt of the employee’s election to rescind.
“5. If the Provisional Payee dies after the employee’s Normal Retirement Date but prior to the employee’s Deferred Retirement Date, upon retirement the employee will be entitled to receive the reduced Retirement Income he would have received in accordance with this Section had he retired on his Normal Retirement Date.
“6. If an employee who has made an election and designation in accordance with this Section terminates his services on or after the effective date of such designation under such circumstances as to entitle him to payment of Retirement Income in accordance with Section VII of the Plan (but for his election and designation in accordance with this Section), and such employee shall die prior to his Normal Retirement Date, there will be payable to his Provisional Payee for life Retirement Income in a reduced amount in accordance with the employee’s election of payments to be made to his Provisional Payee after the death of the employee under (a) or (b), as the case may be, of subsection I of this Section VI. The reduced amount payable to the Provisional Payee shall be based upon the employee’s Accrued Retirement Income at the date of the termination of his service actuarially adjusted. If the employee shall be alive on his Normal Retirement Date, a reduced amount of Retirement Income, determined in accordance with this Section VI, based upon his Accrued Retirement Income at the date of the termination of his service will be payable to him commencing on his Normal Retirement Date, with payments in the same or reduced amount to be continued to his Provisional Payee for life after the employee’s death in accordance with his election. Payments in accordance with this subsection 6 will only be made if application to the Company is made within 5 years after the death of the employee, if he shall die prior to his Normal Retirement Date, or within 5 years after his Normal Retirement Date, if he shall be alive on that date.
“SECTION VII. TERMINATION OF SERVICE
“If the services of an employee included in the Plan terminate for any reason other than death or transfer to an affiliated or associated company as provided by subsection 5 of Section III or retirement as provided by Section IV, and if such employee has had at least 20 years of service with the Company (including service with companies or properties now affiliated or associated with the Company, service with companies or properties heretofore so affiliated or associated prior to the date of severance of such affiliation or association and service with Birmingham Electric Company), whether or not *389 Accredited Service, or has had at least 15 years of such service and has attained the age of 50 at the time of such termination he will receive, commencing at Normal Retirement Date, Retirement Income equal to his Accrued Retirement Income at the date of the termination of such service provided that he makes application to the Company for the payment of such Retirement Income at Normal Retirement Date or within 5 years thereafter. If such employee has had less than 20 years of such service or had not attained the age of 50 having had at least 15 years of such service, he shall have no rights to any Retirement Income under the Plan based upon his service prior to such termination.
“In no event shall such an employee be entitled to any Retirement Income until Normal Retirement Date nor shall the provisions as to minimum Retirement Income in subsection 4 of Section V be applicable to such an employee. The designation of any Provisional Payee by such an employee shall become inoperative upon the termination of his services unless such termination occurs within 10 years prior to Normal Retirement Date and either (a) the designation of the Provisional Payee was made and accepted prior to January 1, 1961 and such designation has not been rescinded, or (b) the designation of the Provisional Payee was made after January 1, 1961, and such termination of service occurred on or after the effective date of the election and designation made in accordance with Section VI.
“SECTION IX. LIMITATION OF RIGHTS OF THE EMPLOYEE
“This Plan shall not be deemed to constitute a contract between the Company and any employee or to be a consideration for, or condition of, the employment of any employee. Nothing contained in this Plan shall be deemed to give any employee the right to be retained in the service of the Company or to interfere with the right of the Company to discharge or retire any employee at any time. Inclusion under the Plan will not give any employee any right or claim to a Retirement Income except upon reaching Normal Retirement Date or Early Retirement Date and no employee or Provisional Payee shall be entitled to any right or claim to a Retirement Income except to the extent such right is specifically fixed under the terms of the Plan and there are funds available therefor in the hands of the Trustee.” (Emphasis added.)

. Appellant does not argue her second allegation in brief and we will therefore make no further comment in regard to it.