[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 359 
Appellant, Randolph County ("the County"), appeals from two orders entered by the Randolph Circuit Court against it in two different actions now consolidated for appeal. The first order denied its motion to intervene in an action, and the second order granted summary judgment against it in a declaratory judgment action.
On September 13, 1979, Charlie Will Thompson, Sheriff of Randolph County, filed with Governor Fob James a written declaration of election to become a supernumerary sheriff pursuant to the provisions of Code of 1975, § 36-22-60. Prior to Thompson's filing of this declaration, criminal proceedings had been instituted *Page 360 
against him in the United States District Court for the Middle District of Alabama. He had been charged with violating various provisions of the federal election laws in that he had knowingly and willfully paid or offered to pay voters to vote in an election. Thompson was found guilty and sentenced to serve a three-year term in the federal penitentiary; however, he served only three months in prison. The balance of the sentence was suspended and he was placed on probation. Thompson was also fined $1,000. This conviction was affirmed by the United States Court of Appeals for the Fifth Circuit. At some point subsequent to his conviction, Thompson's request for appointment as a supernumerary sheriff was denied.
After this denial, Thompson brought a declaratory judgment action against Governor James in the Montgomery Circuit Court seeking an order that he was entitled to an appointment as a supernumerary sheriff. The Montgomery Circuit Court granted the requested judgment. Governor James appealed to this Court.
On January 23, 1981, this Court reversed the judgment of the Montgomery Circuit Court and held that Thompson, "upon his conviction of the infamous crime of voting fraud, became ineligible and disqualified from holding the office of supernumerary sheriff." James v. Thompson, 392 So.2d 1178, 1180
(Ala. 1981). Subsequently, Thompson asked for a return of the funds he had paid into the supernumerary sheriff's fund in Randolph County. These were returned.
On July 1, 1981, Thompson received a pardon from the Alabama Board of Pardons and Paroles.[1] Again, he applied to the governor for a supernumerary sheriff's appointment. Governor George Wallace denied his request on April 10, 1985.
On April 23, 1985, Thompson filed an action in Randolph Circuit Court against Governor Wallace (Thompson v. Wallace) seeking a judgment declaring that, because of the pardon, he was now entitled to supernumerary status. The trial court granted judgment in his favor on November 26, 1985.
On November 27, 1985, Governor Wallace, through a representative in the attorney general's office, filed both a notice of appeal and a motion to stay the trial court's judgment. Shortly thereafter, however, a conflict of interest developed between the governor and the attorney general's office. As a result of this conflict, on December 12, 1985, the attorney general's office moved to withdraw as the governor's counsel. This Court granted that motion on December 31, 1985. On that same day, on motion from the governor's new counsel, the appeal in Thompson v. Wallace was dismissed.
Sometime thereafter, in compliance with the trial court's judgment, Governor Wallace appointed Thompson to a position as a supernumerary sheriff of Randolph County. On January 21, 1986, the County was notified of this appointment by a letter addressed to the probate judge's office. On that same day, Thompson tendered an amount to the county that was equal to the amount he had earlier withdrawn from the *Page 361 
county's supernumerary sheriffs fund. This amount was not accepted by the probate judge. Instead, it is being held in escrow pending a resolution of this appeal.
On January 28, 1986, the County filed the following in the Randolph Circuit Court:
(1) A motion to intervene in the action that had originally been filed by Thompson on April 23, 1985 (Thompson v. Wallace). The County asserted that, because a supernumerary sheriff's salary is paid from county funds, it was entitled to intervene as of right pursuant to Rule 24(a), A.R.Civ.p.
(2) An answer to Thompson's original complaint inThompson v. Wallace.
(3) A motion for relief from the judgment of the trial court that had been entered on November 26, 1985, in Thompson v.Wallace.
On February 26, 1986, the trial court denied the County's motion to intervene, and, thereby, also denied all other relief requested by the County. On March 4, 1986, the County filed a notice of appeal from the trial court's denial of its motion to intervene. That is one of the appeals now before this Court (Case No. 85-655).
On March 7, 1986, while the appeal from the denial of the County's motion to intervene in Thompson v. Wallace was still pending, the County filed an action in Randolph Circuit Court seeking a declaratory judgment as to whether the County had to pay Thompson's salary as a supernumerary sheriff. Within days of the filing of this complaint, Thompson filed a petition for writ of mandamus which requested the trial court to order the County to start paying him as a supernumerary sheriff. Thompson also petitioned for damages from the County's probate judge and all but one of the county commissioners. The damages portion of Thompson's petition was later severed. In turn, each party moved to dismiss the other's complaint or petition.
At hearing, Thompson's motion to dismiss was treated as a motion for summary judgment. The trial court awarded Thompson summary judgment on the County's declaratory judgment claim. Thompson's petition for writ of mandamus was dismissed. On May 28, 1986, the County appealed from that order granting summary judgment. That is the second of the appeals now before this Court (Case No. 85-1124).
On July 7, 1986, Thompson moved to have the appeals in these two cases consolidated. This motion was granted. Thompson has also moved to dismiss these appeals. We consider first the summary judgment granted to Thompson in the County's declaratory judgment action.
In this action, the County makes a number of arguments. Among these are: (1) that the pardon granted to Thompson by the parole board is void on its face and of no effect; (2) that the trial court's decision in Thompson v. Wallace should have been barred by the doctrine of res judicata because of this Court's decision in James v. Thompson, 392 So.2d 1178 (Ala. 1981); (3) that Thompson did not qualify for supernumerary sheriff status because he had earlier withdrawn his funds from the supernumerary sheriff's fund of the County, and (4) that the pardon does not, even if it is valid, entitle Thompson to supernumerary status. It is clear to us that, in making these arguments, the County is attempting to collaterally attack that judgment issued by the trial court in Thompson v. Wallace — that same judgment which the County is trying to attack directly through intervention in Thompson v. Wallace.
As explained in Williams v. First National Bank of Mobile,384 So.2d 89, 93 (Ala. 1980):
 "[A] direct attack upon a judgment is an attempt to amend, correct, reform, vacate, or enjoin the execution of that judgment in a proceeding instituted for that purpose, and . . . a collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted in an attempt to amend, correct, reform, vacate or enjoin its execution."
See also Williams v. Overcast, 229 Ala. 119, 155 So. 543
(1934). This distinction *Page 362 
between a direct and a collateral attack cannot be overemphasized.
A judgment which is regular on its face and indicates subject matter and personal jurisdiction is conclusive on collateral attack. Otto v. Guthrie, 475 So.2d 856 (Ala. 1985); Nigg v.Smith, 415 So.2d 1082 (Ala. 1982); Williams v. First NationalBank of Mobile, supra.
The general rule regarding the collateral attack of a judgment by a person who was not a party to the prior proceeding is adequately stated in 49 C.J.S. Judgments § 414 (1947):
 "A stranger to the record, who was not a party to the action in which the judgment was rendered or in privity with a party is not prohibited from impeaching the validity of the judgment in a collateral proceeding; but in order to do so he must show that he has rights, claims or interests which would be prejudiced or injuriously affected by the enforcement of the judgment, and which accrued prior to its rendition, unless the judgment is absolutely void. Thus situated he may attack the judgment on the ground of want of jurisdiction, or for fraud or collusion; but he cannot object to it because of mere errors or irregularities or for any matters which might have been set up in defense to the original action."
In its declaratory judgment action, the County does not argue any want of jurisdiction, fraud, or collusion. Further, the judgment appears regular "on its face." As such, we must hold that this collateral attack on that judgment must fail. As a result, even though the trial court did not grant summary judgment on the basis of the collateral nature of the County's action, the decision of the trial court is affirmed. SeeBoyd v. Brabham, 414 So.2d 931 (Ala. 1982); Staub v. AlabamaPower Co., 350 So.2d 386 (Ala. 1977).
We now turn our attention to the County's motion to intervene in Thompson v. Wallace.
At the hearing before the trial court, the County argued that it had a right to intervene in Thompson v. Wallace, pursuant to Rule 24(a), A.R.Civ.P. The trial court held that the County could not intervene because, although the County "is an interested party, [it] is not a necessary party" to the action. The trial court's judgment was based, in part, upon its finding that, pursuant to the language of § 36-22-60, Code of 1975, only Governor Wallace is a necessary party to an action brought to determine one's rights under that statute. The pertinent part of § 36-22-60 provides:
 "If the governor shall find that any such declarant is qualified under either subdivision (1) or (2) of this section, he shall then issue such declarant a commission as supernumerary sheriff."
The trial court's use of the terms "necessary" and "interested" parties is misleading and unfortunate. The term "necessary party" is taken from that historical terminology which was once used to determine questions of joinder. See, Committee Comments, Rule 19, A.R.Civ.P.
While the rules governing intervention and joinder are somewhat similar, they must be distinguished. Intervention is a method by which an outsider with an interest in a lawsuit may come in as a party on his own application. Ex parte Howell,447 So.2d 661 (Ala. 1984). However, joinder is a method by which one may be compelled to become a party. Id. We need not decide, in this appeal, whether the County is a party that must be joined pursuant to Rule 19, A.R.Civ.P. Our focus is upon Rule 24, A.R.Civ.P.
Rule 24, A.R.Civ.P., designates two separate types of intervention: "intervention of right" and "permissive intervention." The County argues that it was entitled to intervene as of right in Thompson's action pursuant to Rule 24(a)(2), A.R.Civ.P. That rule provides:
 "Upon timely application, anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and he *Page 363 
is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."
Our first inquiry, then, under Rule 24(a)(2) is whether the County claims a sufficient interest relating to the property or transaction which is the subject of Thompson's declaratory judgment action. The proper approach to this inquiry was very well explained in State ex rel. Wilson v. Wilson,475 So.2d 194, 196 (Ala.Civ.App. 1985):
 "To intervene in a proceeding under Rule 24(a)(2), the intervenor must have a direct, substantial, and legally protectable interest in the proceeding. United States v. Perry County Board of Education, 567 F.2d 277 (5th Cir. 1978). There is no 'clear-cut test' to determine if such an interest exists. Rather, courts should use a flexible approach, which focuses on the circumstances of each application for intervention. Perry County Board of Education, 567 F.2d at 279."
See generally, Wright, Miller Kane, Federal Practice Procedure (hereinafter "Wright Miller"), § 1908 (2d ed. 1986).
In applying this approach to Wilson, the Court of Civil Appeals held that the financial interest that the Department of Pensions and Security had in the collection of child support payments was sufficient to allow it to intervene in a contempt proceeding. We agree and hold similarly that the financial interest that the County had in the outcome of Thompson's declaratory judgment action is sufficient to meet the standard of Rule 24(a)(2). That financial interest is clearly set out in the language of Code of 1975, § 36-22-62(a), which provides:
 "Those persons eligible under either subdivisions (1) or (2) of section 36-22-60, who have 16 years of creditable service as a law enforcement officer, 12 of which were served as sheriff, shall be entitled to receive an amount equal to 50 percent of the monthly salary paid such person at the time of the completion of his service in office, and shall be entitled to receive an additional amount equal to two percent of such person's said monthly salary for each additional year of service up to a maximum of 65 percent of such monthly salary, but in no event shall any person receive payments pursuant to both the supernumerary and disability supernumerary provisions simultaneously. All such payments shall be paid from the general fund of the county in which said eligible person is serving upon his election to become a supernumerary sheriff or to become a supernumerary sheriff due to a disability."
(Emphasis added.)
We now turn to the question of whether the County is so situated that the disposition of Thompson's declaratory judgment action "may as a practical matter impair or impede [its] ability to protect that interest."
Again, we note that this requirement of Rule 24(a) must be measured by a "practical" rather than a "technical" yardstick. See Wilson, supra. See also, Committee Comments, Rule 24, A.R.Civ.P. See generally, Wright Miller, § 1908. Clearly, as a practical matter on the facts of the present case, the County is so situated that, if it is not allowed to intervene, its ability to protect its interest will be impaired or impeded. This can be made no more apparent than it already has been by this Court's decision, as earlier expressed, that the County is not permitted to collaterally attack the judgment issued in Thompson's declaratory judgment action.
Next, we must determine whether the county's interest is adequately represented by existing parties. It is interesting to note, regarding this issue, that the language of Rule 24(a)(2) apparently expresses the requirement so as to place the burden of persuasion on this issue upon those opposing the motion to intervene. The following discussion is found in Wright Miller, § 1909:
 "[U]nder former Rule 24(a)(2) one of the two conditions on intervention was a *Page 364 
showing by the intervenor that his representation by the existing parties 'is or may be inadequate.' The new rule turns this around. If the other two conditions of amended Rule 24(a)(2) are satisfied, intervention is of right 'unless the applicant's interest is adequately represented by existing parties.' [Rule 24(a)(2), A.R.Civ.P., adopts this amended language. See, Committee Comments, Rule 24, A.R.Civ.P.] Though there has been some suggestion to the contrary, it seems entirely clear that the effect of this change is to shift the burden of persuasion. Before the amendment the intervenor had to satisfy the court that the representation of him was or might be inadequate. Although some courts seem to continue to follow this approach, the language of the rule clearly suggests that now he is to be allowed in, if the other conditions of the rule are satisfied, unless the court is persuaded that the representation of him is in fact adequate."
(Footnotes omitted.)
We are not persuaded that, on the facts of the present case, the County's interest was adequately represented by the only existing party, Governor Wallace. For whatever reason, the governor decided not to prosecute the appeal from the trial court's adverse ruling. This decision was made even though the case involved at least one determinative issue of first impression, i.e., the effect a pardon would have on a person's eligibility to hold public office. The County adamantly asserts that it would have prosecuted an appeal. Apparently, the attorney general's office was also of the opinion that the appeal should have been prosecuted.
While it is not for this Court to speculate as to what was the proper course of action regarding the decision to appeal, we perceive that there is a great difference as to the respective duties and responsibilities of the governor's office, on the one hand, and the Randolph County Commission, on the other hand. While the interests of both offices might normally be so similar as to persuade a court that the existence of the one party as a defendant in a lawsuit would mean adequate representation of the other's interest, we do not recognize this as always true. Indeed, for whatever reason, it is clear that the County's interest was not adequately represented in the present case once the decision had been made not to prosecute the appeal. We conclude that, on the facts of this case, the County had a right to intervene under Rule 24(a)(2), A.R.Civ.P.
Thompson has not argued, and the trial court did not hold, that the County's motion to intervene was untimely. Nonetheless, because Rule 24 specifically requires that any motion to intervene must be "timely," we address the timeliness of the County's motion.
Since the rule, itself, is silent concerning what constitutes a "timely application," it has long been held that the determination of timeliness is a matter committed to the sound discretion of the trial court. See Strousse v. Strousse,56 Ala. App. 436, 322 So.2d 726 (1975). See also McDonald v. E.J.Lavino Co., 430 F.2d 1065, 1072 (5th Cir. 1970). Because the pressure to allow intervention "of right" under Rule 24(a) is by its very nature more compelling than is permissive intervention, most courts tend to require less rigidity in evaluation of timeliness under Rule 24(a). See Diaz v. SouthernDrilling Corp., 427 F.2d 1118 (5th Cir.), cert. denied,400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970), rehearingdenied, 400 U.S. 1025, 91 S.Ct. 580, 27 L.Ed.2d 638 (1971). See generally, Wright Miller, § 1916. As expressed in McDonald, 430 F.2d at 1073: "Since in situations where intervention is as of right, the would-be intervenor may be seriously harmed if he is not permitted to intervene, courts should be reluctant to dismiss such a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive."
Notwithstanding these principles, however, motions for intervention after judgment have not met with favor in the courts. See generally, Wright Miller, *Page 365 
§ 1916. As was stated in McDonald, 430 F.2d at 1072: "The rationale which seems to underlie this general principle . . . is the assumption that allowing intervention after judgment will either (1) prejudice the rights of the existing parties to the litigation or (2) substantially interfere with the orderly processes of the court." However, if neither of these results would occur, the mere fact that judgment has already been entered should not by itself require the denial of an application for intervention. See Wright Miller, § 1916.
As explained by the court in McDonald, 430 F.2d at 1074:
 " 'Timeliness' is not a word of exactitude or of precisely measurable dimensions. The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice. The rule has its permissive aspects, and while we do not dislodge nor denigrate the trial court's discretion in matters of intervention, we must view its exercise in the liberal atmosphere of the Rules of Civil Procedure, which are to be construed 'to secure the just, speedy, and inexpensive determination of every action.' Rule 1, Fed.R.Civ.P. [As are the Alabama Rules of Civil Procedure. See Rule 1, A.R.Civ.P.) . . . We think it is correct to say that since 'the privilege of intervention stems from a desire to protect the rights of unrepresented third parties, it becomes apparent that the timely application requirement under Rule 24 was not intended to punish an intervenor for not acting more promptly but rather was designed to insure that the original parties should not be prejudiced by the intervenor's failure to apply sooner.' Note, The Requirement of Timeliness Under Rule 24 of the Federal Rules of Civil Procedure, 37 Va.L.Rev. 863, 867 (1951). Accordingly, it has been the traditional attitude of the federal courts to allow intervention 'where no one would be hurt and greater justice would be attained.' Id. at 868."
In applying these principles to the unusual facts of this case, we cannot escape the conclusion that the County's motion to intervene was timely. The County did not become aware of this litigation until a letter was presented to it on or about January 21, 1986, in which the governor had already appointed Thompson as a supernumerary sheriff. The County's application for intervention was filed just one week later on January 28, 1986. Any delay in the litigation, therefore, cannot be attributed to any dilatory conduct on the part of the County. Further, we fail to see that any substantial prejudice could be caused to Thompson by the delay. While it may be inconvenient to either the trial court or Thompson to allow the County to intervene at this late stage, mere inconvenience is not in itself sufficient to reject as untimely a motion to intervene as of right, see McDonald, supra, particularly considering that, on the facts of this case, what the County is really asking for is the opportunity to take an appeal that an existing party to the litigation decided to discontinue.[2] Many courts have allowed intervention in similar circumstances for the specific purpose *Page 366 
of taking an appeal. See, e.g., United Air Lines, Inc. v.McDonald, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977);Baker v. Wade, 769 F.2d 289 (5th Cir.), rehearing denied,774 F.2d 1285 (1985), cert. denied, ___ U.S. ___, 106 S.Ct. 3337,92 L.Ed.2d 742 (1986); Triax Co. v. TRW, Inc., 724 F.2d 1224
(6th Cir. 1984); United States v. American Telephone Telegraph Co., 642 F.2d 1285 (D.C. Cir. 1980).
Having determined that the County could properly intervene as of right in Thompson v. Wallace in order to prosecute the appeal that was earlier dismissed on motion of the governor's office, we can see no just reason to delay making a determination on the underlying merits of this case. Both parties have submitted briefs in which they discussed these underlying issues. Further, at oral argument of this case, counsel for Thompson insisted that "the merits" are now before this Court. Rule 1, A.R.App.P., declares that these rules "shall be construed so as to assure the just, speedy, and inexpensive determination of every appellate proceeding on its merits." Similarly, Rule 1, A.R.Civ.P., declares that "these rules shall be construed to secure the just, speedy and inexpensive determination of every action." In accordance with these policies, we now address the merits of the County's appeal.
Of those issues raised, we need address only one as determinative of this appeal: The effect a pardon for Thompson would have upon his eligibility for supernumerary sheriff status. Thompson argued, and the trial court agreed, that the pardon he received restored his eligibility. The County argues that it does not restore his eligibility for such status. We must agree with the County. The decision of the trial court is reversed.
The general effect of a pardon was exhaustively discussed inMason v. State, 39 Ala. App. 1, 103 So.2d 337 (1956), affd,267 Ala. 507, 103 So.2d 341 (1958). In that decision, the Court of Appeals concluded:
 "Instead of blotting out of existence the guilt of an offender, the very acceptance of a pardon is an implied acknowledgment of guilt. Burdick v. United States, 236 U.S. 79, 35 S.Ct. 267, 59 L.Ed. 476 [(1915)]. As stated in People ex rel. Prisament v. Brophy, 287 N.Y. 132, 38 N.E.2d 468, 471
[(1942)], 'Absolution, by temporal authority, for an offense implies, perhaps, that there is reason to believe the rigid enforcement of the usual penalty for the offense would work injustice.' A pardon cannot wipe out the historical fact of the conviction, and as appropriately stated by one court, it involves forgiveness, and not forgetfulness. State ex rel. Atty. Gen. v. Irby, 190 Ark. 786, 81 S.W.2d 419 [(1935)]."
(Emphasis added.) 39 Ala. App. at 4-5, 103 So.2d at 340-41.
In affirming the decision of the Court of Appeals inMason, this Court adopted the above statement as the law in Alabama and accepted that court's conclusion that the more liberal statements as to the effect of a pardon that had been made in In re Stephenson, 243 Ala. 342, 10 So.2d 1 (1942), andHogan v. Hartwell, 242 Ala. 646, 7 So.2d 889 (1942), were "broad generalization[s] and like all statements of generalities, will lead to paradoxical conclusions if mechanically and literally applied to every factual situation."Mason, 39 Ala. App. at 1, 103 So.2d at 339. We hold to that statement of the law as it is set out in Mason.
Because, in Alabama, a pardon eliminates neither the fact of conviction nor the moral guilt accompanying the conviction, we must conclude that a pardon does not restore to one pardoned the eligibility to hold public office.
Section 60 of the Constitution of Alabama 1901, provides:
 "No person convicted of embezzlement of the public money, bribery, perjury, or other infamous crime, shall be eligible to the legislature, or capable of holding any office of trust or profit in this state." (Emphasis added.)
In James v. Thompson, supra, this Court concluded both that the office of *Page 367 
supernumerary sheriff was an "office of trust [and] profit,"392 So.2d 1180, and that the crime for which Thompson had been convicted (voting fraud) was an "infamous crime." Id.
Therefore, Thompson was "ineligible and disqualified from holding the office of supernumerary sheriff." Id. Because the pardon Thompson received removed neither the fact of his conviction nor his moral guilt, he remains ineligible to hold that office.
The judgment of the trial court denying the County's motion to intervene is reversed, and this cause is remanded to the trial court with directions to enter a judgment in favor of the County.
The motions to dismiss these appeals are denied.
MOTIONS TO DISMISS DENIED.
AFFIRMED AS TO APPEAL NO. 851124.
REVERSED AND REMANDED WITH DIRECTIONS AS TO APPEAL NO. 85655.
JONES, SHORES, ADAMS and HOUSTON, JJ., concur.
TORBERT, C.J., concurs specially.
MADDOX and STEAGALL, JJ., concur in the result.
ALMON, J., not sitting.
[1] The pardon in the present case provided that "all civil and political rights of which Charlie Will Thompson was, by the laws of Alabama, deprived upon his conviction in said Federal Court . . . are hereby restored."
Although the authority of the Alabama Board of Pardons and Paroles to grant a pardon for a federal conviction has not been made an issue in this case by the parties, we nevertheless point out that authority for such a pardon does exist. InHogan v. Hartwell, 242 Ala. 646, 651, 7 So.2d 889, 892 (1942), this Court stated:
 "We are, therefore, of the opinion the State Board had the authority to issue the order restoring citizenship rights to the contestee [who had been convicted of a federal offense] and that the argument to the contrary is without merit."
While, as is discussed later in this opinion, the statement of the law made in Hartwell concerning the effect of a pardon as to the restoration of specific civil and political rights, e.g., the right to hold public office, was, in effect, overruled by this Court's decision in Mason v. State, 267 Ala. 507, 103 So.2d 341 (1958), affirming 39 Ala. App. 1,103 So.2d 337, the decision as to the above point of law was not overruled. We continue to hold to that statement of the law.
[2] Although the County filed a motion for relief from judgment along with its motion to intervene and answer, the wording of this motion makes clear that it was seeking intervention only for the purpose of taking the appeal that the governor's office had decided not to pursue. In pertinent part, the County's motion for relief stated:
 "Said Randolph County would further state that its interests were being adequately protected apparently up until January 2, 1985 [sic, December 31, 1985], at which time the Attorney General's office was allowed to withdraw as counsel for the Governor of the State of Alabama due to a conflict of interest which had arisen between the Governor's office and the Attorney General's office. It is apparent from the status of the pleadings that the Governor's office of the State of Alabama is not willing to protect the interest of the citizens of Randolph County by not pursuing the appeal which had originally been filed in this matter."
Under the Alabama Rules of Civil Procedure, the nomenclature of a motion is not controlling. Ex parte Hartford Ins. Co.,394 So.2d 933 (Ala. 1981).