PARKER, Justice.
The State of Alabama, the Alabama Department of Finance, and the Comptroller of the State of Alabama (hereinafter collectively referred to as “the State”), nonparties to the underlying action, appeal from the St. Clair Circuit Court’s order denying the State’s motion to intervene as of right.

Facts and Procedural History

The circuit court set forth the relevant facts and procedural history in its order of October 15, 2013, as follows:
“This matter came before the Court on July 11, 2013, for a hearing on the Motion to Intervene filed by the State of Alabama, the Alabama Department of Finance, the Alabama Comptroller (the ‘State’) and the State’s Rule 60(b)[, Ala. R. Civ. P.,] Motion for Relief from Judgment or Order (‘Rule 60(b) Motion’), both of which motions were filed on June 25, 2013.
“Upon review and consideration of the State’s Motion to Intervene, the State’s Rule 60(b) Motion, the remaining pleadings in this matter, arguments by counsel of the State and the Estate [of Frances Ann Yarbrough, deceased (‘the Estate’) ], and applicable law, this Court finds as follows:
“1. This estate matter has been pending since 2001. In March 2012, this Court found that the decedent, Mrs. Frances Ann Yarbrough, died intestate *949 with no heirs that are in the line of descendant distribution under the laws of the State of Alabama; thus, in accordance with § 43-8-44, Ala.Code 1975, her assets escheated to the State of Alabama.[1]
“2. By order dated March 19, 2012, this Court ordered the Estate to pay certain expenses of the Estate, and then to pay the balance of the Estate’s funds to the State of Alabama. In that same order, this Court ordered the State of Alabama to pay the escheated funds to the St. Clair County’s Circuit Clerk’s office to be used by the Clerk ‘to rehire some of the employees lost to proration.’
“3. On May 7, 2012, a check in the amount of $247,850.17 was mailed to the State of Alabama with a copy of this Court’s March 19th order.
“4. Following receipt of the Estate’s check and this Court’s order, on or about May 15, 2012, the State of Alabama, through Assistant Attorney General J. Matt Bledsoe, contacted the Estate’s counsel, Brandi Williams, to receive assistance from the Estate in seeking a modification of this Court’s March 19th order.
“5. The State, through its counsel Mr. Bledsoe, stated that the Estate’s escheated funds must be used or applied in furtherance of education in accordance with the Alabama Constitution.[2] Notably, the State, through its counsel Mr. Bledsoe, declared that it had no objection to disbursing the Estate’s es-cheated assets to the Pell City Board of Education and the St. Clair County Board of Education.
“6. Based on that representation, the Estate moved this Court to Alter, Amend, or Vacate its March 19th order to direct the State of Alabama to pay the Estate’s escheated assets to the Pell City Board of Education and the St. Clair County Board of Education. In that motion, the Estate informed the Court that ‘the Attorney General’s Office ha[d] no objection to the balance of the Estate of Frances Ann Yarbrough being paid by the State of Alabama to the St. Clair County Board of Education and the Pell City Board of Education.’
“7. This Court granted the Estate’s motion and entered an amended order on May 22, 2012, directing the State of Alabama to pay the Estate’s escheated assets to the Pell City Board of Education and the St. Clair County Board of Education.
“8. By letter dated June 7, 2012, the State, through its counsel Deputy Attorney General Jerry Carpenter, objected to this Court’s May 22nd order. This Court treated Mr. Carpenter’s letter as a Motion to Alter, Amend, or Vacate, filed the letter with the circuit clerk on June 13, 2012, and set the matter for a hearing on July 12, 2012.
“9. Because the State was not a party to this matter, the State apparently did not receive direct notice of the July 12th hearing. The Estate’s counsel, Ms. Williams, however, provided the State notice of the hearing by e-mail to Mr. Bledsoe.
“10. The State did not appear at the July 12th hearing, and this Court denied the relief requested by the State through its June 7th letter by an order dated July 17, 2012.
*950 “11. Thereafter, on August 15, 2012, the State filed a formal Motion for Reconsideration of this Court’s denial of the relief requested in the State’s June 7th letter.
“12. This Court denied the State’s Motion for Reconsideration on August 16, 2012.
“13. On August 28, 2012, the State appealed this Court’s May 22nd order to the Alabama Supreme Court.”
On June 20, 2013, this Court dismissed the State’s appeal (case no. 1111546) without prejudice. In addition to dismissing without prejudice the State’s appeal, this Court’s order stated:
“IT IS FURTHER ORDERED that the appellants, the State of Alabama, the Alabama Department of Finance, and the Comptroller of the State of Alabama, may intervene in the underlying action for purposes of taking an appeal from the final judgment in this cause; and that the appellants may take a timely appeal after the St. Clair Circuit Court issues an order granting the appellants’ motion to intervene in the underlying action. See Rule 4(a), Ala. R.App. P.”
(Capitalization in original.)
The circuit court’s October 15, 2013, order sets forth the remaining pertinent facts and procedural history, as follows:
“15. On June 25, 2013, the State moved to intervene as a matter of right in this action pursuant to Rule 24(a)(2) of the Alabama Rules of Civil Procedure, so that the State could seek relief from this Court’s May 22nd order pursuant to Rule 60(b) of the Alabama Rules of Civil Procedure.
“16. In its motion, the State asserts that ‘Rule 24(a)(2), Ala. R. of Civ. P., provides for intervention of right “when the applicant claims an interest relating to the property or transaction which is the subject of the action” and the applicant’s ability to protect its interest may be impaired or impeded, unless the applicant’s interest is adequately represented by an existing party.’ Motion at [para.] 5.”
The circuit court then denied the State’s motion to intervene, as follows:
“17. While the State accurately quotes a portion of Rule 24(a)(2), Ala. R. Civ. P., the State fails to quote the most important provision of that Rule as it applies to this case. Both Ala. R. Civ. P. Rule 24(a) and Ala. R. Civ. P. Rule 24(b) require ‘timely application’ to the trial court for requests for intervention. The State makes no mention of this requirement in its Motion to Intervene and does not attempt to argue that its Motion is ‘timely’ under Rule 24(a)(2), Ala. R. Civ. P.
“18. Since Ala. R. Civ. P. 24 ‘is silent concerning what constitutes a “timely application,” it has long been held that the determination of timeliness is a matter committed to the sound discretion of the trial court.’ Randolph County v. Thompson, 502 So.2d 357, 364 (Ala.1987).
“19. In this matter, it is undisputed that the State had notice of the issues for which it seeks intervention at least as early as May 2012. Despite having this notice, the State chose not to intervene in this matter, but rather to seek review of this Court’s order as a non-party to this case. Once that review was unsuccessful, the State sought intervention as a matter of right in June 2013. Under these facts, to hold that the State’s Motion to Intervene is a ‘timely application’ under Rule 24(a)(2), Ala. R. Civ. P., would require an absurd construction of the word ‘timely.’ See Root v. City of Mobile, 592 So.2d 1051, 1053 (Ala.1992) (trial court did not abuse its discretion in denying a motion to *951 intervene filed more than 10 months after the underlying action was filed).
“20. The State of Alabama and the Alabama Attorney General’s Office are not exempt from the rules requiring ‘timely application for intervention,’ and the State must be held responsible for its failure to comply with Rule 24, Ala. R. Civ. P. See American Benefit Life Ins. Co. v. Ussery, 373 So.2d 824, 828 (Ala.1979) (holding that the Attorney General’s petition for intervention ‘came too late’).
“21. The State’s actions in this matter, including its failure to ‘timely’ apply for intervention, have resulted in wasted judicial resources and unnecessary delay in the final resolution of this case. To allow the State to intervene now, more than a year after the State’s first knowledge of the matters it seeks to challenge through intervention, would be prejudicial and would create additional undue delay.
“It is therefore ORDERED, ADJUDGED and DECREED by the Court as follows:
“A. For the foregoing reasons, the State’s Motion to Intervene is DENIED.
“B. Because the State’s Motion to Intervene is DENIED, this Court need not consider the merits of the State’s Rule 60(b) Motion. The State’s Rule 60(b)'motion is also DENIED.”[3]
(Capitalization in original.) The State appealed.

Standard of Review

“The standard of review applicable in cases involving a denial of a motion to intervene as of right is whether the trial court has acted outside its discretion. See City of Dora v. Beavers, 692 So.2d 808, 810 (Ala.1997).” Black Warrior Riverkeeper, Inc. v. East Walker Cnty. Sewer Auth., 979 So.2d 69, 72 (Ala.Civ.App.2007). Further, this Court reviews questions of law de novo. National Ins. Ass’n v. Sockwell, 829 So.2d 111 (Ala.2002); Moss v. Williams, 822 So.2d 392 (Ala.2001); and Reed v. Board of Trs. of Alabama State Univ., 778 So.2d 791 (Ala.2000).

Discussion

Initially, we note that the State’s appeal is properly before this Court:
“ ‘[A] denial of a motion to intervene is always an appealable order.’ Farmers Ins. Exch. v. Raine, 905 So.2d 832, 833 (Ala.Civ.App.2004) (citing Kids’ Klub II, Inc. v. State Dep’t of Human Res., 763 So.2d 259, 260 (Ala.Civ.App.2000); Alabama Fed. Sav. & Loan Ass’n v. Howard, 534 So.2d 609 (Ala.1988)).”
Jim Parker Bldg. Co. v. G & S Glass & Supply Co., 69 So.3d 124, 130 (Ala.2011).
The State argues that the circuit court violated this Court’s June 20, 2013, order allowing the State to intervene in the underlying action; the State argues that the circuit court was without discretion to deny the State’s motion to intervene. The estate of Frances Ann Yar-brough, deceased (“the estate”), argues that this Court’s June 20, 2013, order was not a mandate to the circuit court to grant the State’s motion to intervene, should the State file such a motion, but required the circuit court only to consider such a motion if filed by the State. The State’s interpretation of this Court’s June 20, 2013, order is correct. See Ex parte Stewart, 74 So.3d 944, 948 (Ala.2011) (“Section 12-1-7(3), Ala.Code 1975, provides that every court has the power ‘to compel obedience to its judgments, orders and process and to or *952 ders of'a judge out of court, in an action or proceeding therein.’ ”).
As set forth above, this Court’s June 20, 2013, order stated, in pertinent part:
“It is ... ordered that the appellants, the State of Alabama, the Alabama Department of Finance, and the Comptroller of the State of Alabama, may intervene in the underlying action for purposes of taking an appeal from the final judgment in this cause; and that the appellants may take a timely appeal after the St. Clair Circuit Court issues an order granting the appellants’ motion to intervene in the underlying action.”
(Emphasis added.)
By stating that the State “may intervene in the underlying action,” this Court’s order left no discretion in the circuit court as to whether to allow the State to intervene, but required the circuit court to grant the State’s motion to intervene, if the State filed such a motion. This Court’s order did not state that the State may file' a motion to intervene, but affirmatively concluded that the State “may intervene.” The use of the word “may” in this Court’s order pertained to the State’s decision to intervene; it did not give the circuit court the discretion to deny a motion to intervene filed by the State. By denying the State’s motion, the circuit court failed to comply with this Court’s June 20, 2013, order; thus, the circuit court’s order denying the State’s motion to intervene is reversed.
The State has requested that this Court, if it determines that the circuit court’s denial of the State’s motion to intervene was in error, determine the merits of the underlying case. In support of its request, the State cites Randolph County v. Thompson, 502 So.2d 357 (Ala.1987).
In Randolph County, the underlying action appealed from involved the then governor’s appointment of Charlie Will Thompson to a position as a supernumerary sheriff of Randolph County (“the County”). The County was notified of Thompson’s appointment, and the County filed a motion to intervene as of right pursuant to Rule 24(a), Ala. R. Civ. P., in an action Thompson had earlier filed against then Governor George Wallace, because, the County alleged, a supernumerary sheriffs • salary is paid from County funds. The circuit court denied the County’s motion to intervene, and the County appealed. This Court determined that the circuit court’s order denying the County’s motion to intervene was in error. This Court then went on to address the merits of the underlying action based on the following reasoning:
“Having determined that the County could properly intervene as of right in Thompson v. Wallace in order to prosecute the appeal that was earlier dismissed on motion of the governor’s office, we can see no just reason to delay making a determination on the underlying merits of this case. Both parties have submitted briefs in which they discussed these underlying issues. Further, at oral argument of this case, counsel for Thompson insisted that ‘the merits’ are now before this Court. Rule 1, A[la]. R.App. P., declares that these rules ‘shall be construed so as to assure the just, speedy, and inexpensive determination of every appellate proceeding on its merits.’ Similarly, Rule 1, A[la]. R. Civ. P., declares that ‘these rules shall be construed to secure the just, speedy and inexpensive determination of every action.’ In accordance with these policies, we now address the merits of the County’s appeal.”
502 So.2d at 366.
In the present case, we have determined that the State had the right to intervene in the underlying action and that the circuit *953 court erred' in denying its motion to intervene. Further, the estate has presented no argument against or objection to this Court’s considering the merits of the underlying case. Indeed, the estate notes the possibility that this Court may consider the merits of the underlying action and presents arguments concerning the merits in its brief on appeal, as will be discussed below. As was the case in Randolph County, we have concluded that the State had the right to intervene in the underlying action; the estate has no objections to consideration of the merits of the underlying action; and the merits of the underlying action have been briefed by both sides in their briefs presently before this Court. Thus, to “assure the just, speedy, and inexpensive determination of every appellate proceeding on its merits,” we will consider the merits of the underlying action. Rule 1, Ala. RApp. P.
As set forth above, on March 19, 2012, the circuit court entered an order determining that Mrs. Yarbrough had “died intestate with no heirs that are in the line of descendant distribution under the laws of the State of Alabama” and that the assets of the estate “must escheat to the State of Alabama.” In that same order, the circuit court further stated:
“Since this money originated in St. Clair County and further since proration has substantially decreased the number of employees in the circuit clerk’s office, hampering the efficiency of that office, the comptroller is directed to pay these funds to the circuit clerk of St. Clair [C]ounty to be used solely to rehire some of the employees lost to pro-ration.”
Also as set forth above, on May 7, 2012, a check in the amount of $247,850.17 was mailed to the State treasurer with a copy of the circuit court’s March 19 order. The State has maintained possession of the es-cheated funds of the estate since that date.
On May 22, 2012, the circuit court, upon motion of trial counsel for the personal representative of the estate, entered the following order, amending the March 19 order:
“Upon consideration of the Motion to Amend, Alter, or Vacate filed by ... [the] Personal Representative of the Estate ..., it is ORDERED, ADJUDGED and DECREED as follows:
“1. That the State of Alabama shall pay the sum of $247,750.17[4] to the St. Clair County Board of Education and the Pell City Board of Education.
“2. As determined by each system’s school population, the State of Alabama shall disburse to the St. Clair County Board of Education the sum of $165,250.17.
“3. The State of Alabama shall also disburse the sum of $82,500.00 to the Pell City Board of Education.
“4. That each Board of Education shall spend the funds however it sees fit.”
(Capitalization in original.)
On appeal, the State argues that the circuit court’s May 22, 2012, order is unconstitutional in that it violates the separation-of-powers doctrine; we agree. The separation-of-powers doctrine is expressly set forth in the Alabama Constitution: “In Alabama, separation of powers is not merely an implicit ‘doctrine’ but rather an express command; a command stated with a forcefulness rivaled by few, if any, similar provisions in constitutions of other sov *954 ereigns.” Ex parte James, 836 So.2d 813, 815 (Ala.2002). Article III, § 42, Ala. Const.1901, states:
“The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.”
Article III, § 43, Ala. Const.1901, states:
“In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men.”
(Emphasis added.) More specifically, as it pertains to the present case, Art. Ill, § 43.01, Ala. Const. 1901 (Off.Recomp.), states, in pertinent part: “No order of a state court, which requires disbursement of state funds, shall be binding on the state or any state official until the order has been approved by a simple majority of both houses of the Legislature.” See Ex parte James, 836 So.2d at 815 (stating that § 43.01 nullifies “any ‘order of a state court, which requires disbursement of state funds, ... until the order has been approved by a simple majority of both houses of the Legislature’”). Further, Art. IV, § 72, Ala. Const.1901, states, in pertinent part: “No money shall be paid out of the treasury except upon appropriations made by law ...,” i.e., approved by the Legislature. Ex parte James, 713 So.2d 869, 903 (Ala.1997) (Hooper, C.J., dissenting)(“Article III, § 72, Ala. Const. 1901, provides that no money shall be paid out of the treasury except upon appropriation, made by law, i.e., passed by the Legislature.”). See also 63C Am.Jur.2d Public Funds § 34 (1997) (“The power to appropriate public funds for specific purposes and to reduce appropriations is solely a legislative power.” (quoted with approval in McInnish v. Riley, 925 So.2d 174, 179 (Ala.2005))).
In the present case, in accordance with Alabama law, the circuit court escheated the funds of the estate pursuant to § 43-8-44, which were paid to the State treasurer pursuant to § 43-6-7, Ala.Code 1975. Article XIV, § 258, Ala. Const.1901, requires that “all estates of deceased persons who die without leaving a will or heir, shall be used or applied to the furtherance of education.” Additionally, Art. XIV, § 260, Ala. Const.1901, states, in pertinent part:
“The income arising from the sixteenth section trust fund, the surplus revenue fund, until it is called for by the United States government, and the funds enumerated in sections 257 and 258 of this Constitution, together with a special annual tax of thirty cents on each one hundred dollars of taxable property in this state, which the legislature shall levy, shall be applied to the support and furtherance of education, and it shall be the duty of the legislature to increase the educational fund from time to time as the necessity therefor and the condition of the treasury and the resources of the state may justify; provided, that nothing herein contained shall be so construed as to authorize the legislature to levy in any one year a greater rate of state taxation for all purposes, including schools, than sixty-five cents on each one hundred dollars’ worth of taxable property; and provided further, that nothing herein contained shall prevent the legislature from first providing for the payment of the bonded indebtedness of the *955 state and interest thereon out of all the revenue of the state.”
(Emphasis added.) Therefore, pursuant to the Alabama Constitution, there is no doubt that the escheated funds of the estate must be applied for the furtherance of education. However, the estate has not directed this Court’s attention to any authority indicating that the circuit court had the authority to order the State to appropriate the escheated funds to a specific State agency.[5] As set forth above, such power rests solely with the Legislature.
This is not the first time a branch of government other than the Legislature has attempted to usurp the legislative power to appropriate State funds. In Wallace v. Baker, 336 So.2d 156 (Ala.1976), the question before this Court was: “Can the Governor, by executive order, appropriate public funds for education when the Legislature adjourns without passing an appropriation bill?” 336 So.2d at 156. Based on the separation-of-powers doctrine, this Court concluded that the governor does not have the authority to appropriate State funds, stating:
“Section 43 of our State Constitution prohibits the Executive branch from exercising either legislative or judicial powers. Section 72 of our Constitution specifically prohibits the payment out of the treasury of money ‘except upon appropriations made by law.’ Amendment 111, which states that it is the policy of the State ‘to foster and promote the education of its citizens,’ does not grant additional powers to the Executive. The power to appropriate is still legislative.”
Id. Just as this Court determined in Wallace that the governor cannot usurp the legislative authority to appropriate State funds by means of an executive order, neither can the circuit court usurp the legislative authority to appropriate State funds by means of an order or a judgment.
The estate further argues that, because J. Matt Bledsoe, an assistant attorney general, approved the plan of the estate’s trial counsel to ask the circuit court to amend its judgment to order the State to appropriate the escheated funds to the St. Clair County and Pell City Boards of Education, the State'waived application of the separation-of-powers doctrine to this case. The estate has not cited any authority in support of its argument. Based on its failure to cite any applicable law, the estate’s argument in this regard does not comply with Rule 28(a)(10), Ala. R.App. P., and we need not consider its argument. See Harris v. Owens, 105 So.3d 430, 436-37 (Ala.2012).[6]
However, we note that the estate’s argument is not well taken. The estate essentially argues that the executive branch can waive the separation-of-powers doctrine on behalf of the legislative branch so that the judicial branch can order the legislative branch how to appropriate funds. First, we note that at the time Bledsoe advised the estate’s trial counsel to file a postjudgment motion requesting that the circuit court enter an order appropriating State funds to the St. Clair County and Pell City Boards of Education, the State had not yet moved to intervene in *956 the action; we fail to see how a nonparty can waive a constitutional doctrine.
Moreover, the separation-of-powers doctrine is not an affirmative defense that can be waived, but a command expressly stated in the Alabama Constitution. See Ex parte James, supra. The circuit court lacked the authority to instruct the Legislature how to appropriate the escheated funds of the estate. The executive branch cannot waive the legislative branch’s constitutional authority and allow the judicial branch to exercise that authority. Our constitution clearly defines the roles of each branch of government and expressly forbids each branch from exercising another branch’s constitutional authority. The estate’s argument is both unsupported and unpersuasive.
The circuit court’s orders violate the separation-of-powers doctrine in that the circuit court sought in both orders to exercise a legislative power; the circuit court had no authority to appropriate State funds to a specific State agency. See Wallace, supra. As a result, we vacate the circuit court’s May 22, 2012, order and that portion of the circuit court’s March 19, 2012, order purporting to direct that the funds be paid to the circuit clerk of St. Clair County. The funds of the estate were properly escheated in the March 19, 2012, order, and that action of the circuit court stands.

Conclusion

Because the circuit court failed to follow this Court’s June 20, 2013, order, we reverse the circuit court’s October 15, 2013, order denying the State’s motion to intervene. Further, having considered the merits of the underlying action, we vacate the circuit court’s May 22, 2012, order purporting to order the disbursement of the escheated funds because the circuit court was without authority to do so based on the separation-of-powers doctrine. In its March 19, 2012, order, the circuit court properly ordered the funds of the estate within its authority escheated, and, insofar as that order does so, it is affirmed. However, the circuit court exceeded its authority in attempting to appropriate the escheated funds. All issues having been decided on both the motion to intervene and the underlying action, a judgment is rendered for the State.
ORDER OF OCTOBER 15, 2013, REVERSED; ORDER OF MAY 22, 2012, VACATED; ORDER OF MARCH 19, 2012, AFFIRMED IN PART AND VACATED IN PART; AND JUDGMENT RENDERED FOR THE STATE.
STUART, MURDOCK, MAIN, WISE, and BRYAN, JJ., concur.
MOORE, C.J., and BOLIN and SHAW, JJ., concur in the result.

. Section 43-8-44, Ala.Code 1975, states:
"If there is no taker under the provisions of this article, the intestate estate passes to the state of Alabama.”

. Article XIV, § 258, Ala. Const.1901, states, in pertinent part: “[A]ll estates of deceased persons who die without leaving a will or heir[ ] shall be used or applied to the furtherance of education.”

. The circuit court also entered a judgment awarding attorney fees to trial counsel for the estate of Frances Ann Yarbrough; the circuit court later vacated that judgment ex mero motu.

. We note that, in its order denying the State’s motion to intervene, the circuit court states that $247,5 50.17 was submitted to the State as the escheated funds. Here, the circuit court is purporting to order the State to distribute $247,750.17; the parties do not explain this discrepancy.

. See Ex parte Hale Cnty. Bd. of Educ., 14 So.3d 844 (Ala.2009) (recognizing that county boards of education are agencies of the State); and Ex parte Phenix City Bd. of Educ., 67 So.3d 56 (Ala.2011)(recognizing that city boards of education are agencies of the State).

. We note that the estate also argues that it should be awarded attorney fees out of the escheated funds based on Bledsoe’s actions. However, the estate has cited no authority supporting this argument; thus, we need not consider it. See Rule 28(a)(10); see also Harris, supra.